**Lynn NICHOLAS, Lester Johnson and Julian Gittens, Plaintiffs,**

v.

**NYNEX, INC., Defendants.**

**No. 94 CIV. 5191(WCC).**

United States District Court, S.D. New York.

Aug. 1, 1997.

Carton & Rosoff, P.C., Harrison, NY, David M. Rosoff, Of Counsel, for Plaintiffs.

Epstein, Becker & Green, P.C., New York, NY, Thomas R. Kelly, Of Counsel, for Defendant.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

On July 15, 1994, Lynn Nicholas' and Lester Johnson filed this action against their employer NYNEX, Inc. alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and New York Human Rights Law, N.Y. Executive Law § 296 *et seq.*[1] Defendant moves for partial summary judgment, pursuant to Fed.R.Civ.P. 56, on the ground that certain of plaintiffs' claims are time barred. Plaintiffs cross-move seeking to have the issues that defendant raises in its motion reserved for trial because, plaintiffs believe, further discovery is required.

## BACKGROUND

The following undisputed facts are taken from the parties' Rule 3(g) statements, from affidavits submitted by the parties, and from plaintiffs' deposition testimony. Both Nich-olas and Johnson are African–Americans currently employed by NYNEX. Plaintiff Nicholas began working for NYNEX in 1964 as a "frame man." He subsequently became a NYNEX systems analyst at a salary grade of ten. In approximately 1982, NYNEX promoted Nicholas to the position of senior systems analyst with a salary grade of twenty-two. Nicholas has not been promoted since that time. Plaintiff Johnson began his employment at NYNEX in 1976. In approximately 1984, Johnson became a systems analyst, salary grade eleven, and has not received a promotion since.

Nicholas contends that "[d]espite doing work that is equal to or better than the work of similarly situated whites [he] has remained at the same promotion grade since his promotion to senior systems analyst in 1982–83, while whites have been promoted." (Complaint dated June 24, 1994, at ¶ 12.) Specifically, Nicholas alleges that since 1984, he has received adverse performance evaluations that did not fairly reflect the caliber of his work. According to Nicholas, in addition to denying him promotions, NYNEX has failed over the course of his employment to grant him the salary increases to which he was entitled. Last, Nicholas alleges that "on ten or more occasions" NYNEX has unfairly denied him a performance bonus, referred to at NYNEX as an Extra Merit Award. (Comp. at ¶ 23.) In addition, Nicholas alleges that he was nominated for a Technical Excellence Award on several occasions, but despite his qualifications, "less qualified white employees" ultimately received the awards. (Comp. at ¶ 24.) According to Nicholas, "[t]here is a pattern at New York Telephone of disparate treatment of Blacks in promotion, salary increases and bonuses." (Comp. at ¶ 26.) Nicholas filed his Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 14, 1993.

Like Nicholas, Johnson contends that because of his race, NYNEX denied him promotions, salary increases, awards, and bonuses. Johnson asserts that this discriminatory treatment began in 1984, when he was denied

---

**1.** In an Opinion and Order dated June 17, 1996, the court dismissed the claims of a third plaintiff, Julian Gittens, in this action.

the "ready now" status that would have designated him as eligible for promotion. However, he did receive "ready now" *status in 1992.*[2] (Johnson Dep. at 282–83.) Johnson estimates that he was improperly deprived of "somewhere between 40 and 52 promotions." (Johnson Dep. at 320.) Johnson specifically alleges that in 1990, he was not selected to fill a vacant position as a team leader, although he was more qualified and deserving than the white employee who received the promotion. Johnson subsequently submitted written complaints about his treatment and contends that he has suffered retaliation in the form of poor evaluations. Johnson filed his Charge of Discrimination with the EEOC on October 21, 1993.

## DISCUSSION

### 1. Plaintiffs' Cross–Motion

■ The court first considers plaintiffs' cross-motion urging that resolution of defendant's motion be deferred because additional discovery is allegedly necessary. Plaintiffs' cross-motion also requests that the court order defendant to comply with plaintiffs' discovery demands.[3] Although plaintiffs fail to set forth the statutory basis for their cross-motion, the court will treat it as a request under Rule 56(f) of the Federal Rules of Civil Procedure.

■ Pursuant to Rule 56(f), if it appears that the party opposing a motion for summary judgment cannot "present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit ... discovery to be had...." A party seeking such discovery must file an affidavit explaining (1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what efforts the affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts. *Hudson River Sloop Clear-*

*water v. Dept., of Navy,* 891 F.2d 414, 422 (2d Cir.1989).

Plaintiffs have submitted affidavits in which they aver that several depositions are not yet complete and that defendants have refused to produce certain requested documents. Although plaintiffs broadly assert that the data contained in these documents are relevant to their claims of racially discriminatory practices at NYNEX, plaintiffs fail to chronicle the efforts they made to obtain the information they now contend is essential, and they offer no explanation as to why these efforts were unsuccessful. On this point, plaintiffs do not appear to dispute defendant's assertion, submitted in the form of an affidavit, that in response to plaintiffs' discovery demands, many responsive documents were in fact made available for inspection but were not thoroughly examined by plaintiffs before they submitted their cross-motion. (Siberstein Aff. dated Dec. 12, 1996.) Defendant also states that it does not possess any documents that fall within several of the categories that plaintiffs have asserted defendant did not provide. In any event, despite having ample opportunity to do so, plaintiffs failed to request the court's intervention to compel discovery before filing their cross-motion to stay decision of defendant's summary judgment motion. Thus, even if defendant did fail timely to produce documents that plaintiffs requested in discovery, plaintiffs' opposition to summary judgment is unjustified. Last, we note that, notwithstanding their cross-motion, plaintiffs separately responded to defendant's motion without contending therein that they were unable to present facts necessary to press their continuing violation theory. Thus, because plaintiffs' affidavits do not meet the criteria of Rule 56(f) as construed by the Second Circuit, plaintiffs' cross-motion is denied.

### 2. Defendant's Motion for Partial Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment

---

**2.** Johnson alleges that defendant removed him from "ready now" status but provides no date upon which this occurred. (Comp. at ¶ 57.)

**3.** The parties agree that discovery in this matter is now complete. Thus, plaintiffs' request for a discovery order is moot.

is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." The burden falls upon the moving party to demonstrate the absence of a material, factual dispute. Fed.R.Civ.P. 56(e); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). A material fact is one whose resolution would "affect the outcome of the suit under governing law," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). If the moving party satisfies its burden, the nonmoving party cannot simply rest on allegations contained in its complaint. Fed R. Civ. P. 56(e). The nonmovant "must set forth specific facts showing that there is a genuine need for trial," Fed.R.Civ.P. 56(e), and there must be more than merely "some metaphysical doubt as to [those] material facts." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In a Title VII action, where a defendant's intent and state of mind are placed in issue, summary judgment is ordinarily inappropriate. *Rosen v. Thornburgh*, 928 F.2d 528, 533 (2d Cir.1991). However, conclusory allegations of discrimination are insufficient to satisfy the requirements of Rule 56(e). *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985). Indeed, "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to commercial or other areas of litigation." *Id.*

Defendant moves for partial summary judgment against both plaintiffs on the ground that much of the alleged misconduct took place before the limitations period provided by Title VII and is therefore time barred. Plaintiffs rejoin that defendant's course of conduct constitutes a "continuing violation." Thus, plaintiffs maintain that the timely filing of their EEOC charges after the last instance of discrimination also renders timely their earlier claims. Defendant argues that we should reject plaintiff's continuing-violation theory because plaintiff cannot demonstrate a discriminatory policy or practice on the part of NYNEX, and the allegedly improper actions were, at worst, discrete, isolated incidents. According to defendant, Nicholas's claims regarding discriminatory acts that occurred before December 18, 1992 are time barred, as are Johnson's claims for acts prior to December 24, 1992.

Title VII requires a claimant to file a discrimination charge with the EEOC within 180 days of the alleged discriminatory act or, if the claimant has already filed the charge with a state or local equal employment agency, within 300 days of the alleged action. 42 U.S.C. § 2000e–5(e); *Gomes v. Avco Corp.*, 964 F.2d 1330 (2d Cir.1992).[4] Under ordinary circumstances, the failure to bring a timely charge with the EEOC, as measured from the date the claimant receives notice of the allegedly discriminatory decision, *see Morse v. University of Vermont*, 973 F.2d 122, 125 (2d Cir.1992), will bar a federal civil action based on discrimination. *Miller v. Int'l Tel. and Tel. Corp.*, 755 F.2d 20, 23 (2d Cir.1985). The mandatory filing period, however, is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 392, 102 S.Ct. 1127, 1131–32, 71 L.Ed.2d 234 (1982).

One ground for equitable tolling is provided by the continuing-violation doctrine. *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir.1997). A Title VII claimant may rely upon time-barred acts of discrimination if they are linked to an act that is within the limitations period. To establish a continuing violation, a plaintiff may demonstrate that the defendant had adopted a discriminatory policy or practice, such as the use of discriminatory lists or employment tests, prior to and during the limitations period. *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir.1993) (citing *Cook v. Pan Am.*

---

4. We find no reference in the record to plaintiffs having filed their charges with a state or local equal employment agency before filing with the EEOC. However, since the parties agree that the 300–day period applies in this case, we will accept this as a stipulated fact.

*World Airways, Inc.,* 771 F.2d 635, 646 (2d Cir.1985); *Association Against Discrimination in Employment, Inc. v. Bridgeport,* 647 F.2d 256, 274–75 (2d Cir.1981)). Alternatively, a plaintiff must demonstrate that the employer permitted a series of specific, related acts of discrimination for so long as to amount to a discriminatory policy or practice. *Lightfoot,* 110 F.3d at 907; *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 713 (2d Cir.1996); *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994). Discrete incidents of discrimination that are not attributable to discriminatory practices or policies are insufficient. *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994). Moreover, the continuing violation doctrine is disfavored in this Circuit, and will be applied only upon a showing of compelling circumstances. *Detrick v. H & E Machinery, Inc.,* 934 F.Supp. 63, 67 (W.D.N.Y.1996); *Lloyd v. WABC–TV,* 879 F.Supp. 394, 399 (S.D.N.Y.1995); *Blesedell v. Mobil Oil Co.,* 708 F.Supp. 1408, 1415 (S.D.N.Y.1989).

■ As a preliminary matter, the court addresses the defendant's claim that plaintiffs have failed adequately to allege continuing violations; by NYNEX. Defendant is correct that in order to avoid Title VII's time bar, a plaintiff must clearly assert a continuing-violation in both the plaintiff's EEOC filing and in the district court complaint. *O'Malley v. GTE Serv. Corp.,* 758 F.2d 818, 821 (2d Cir.1985); *Carrasco v. New York City Off–Track Betting,* 858 F.Supp. 28, 31–2 (S.D.N.Y.1994), *aff'd,* 50 F.3d 3 (1995). However, it would be overly formalistic to reject a civil rights plaintiff's continuing-violation claim simply because that plaintiff did not include the phrase "continuing violation" in his EEOC charge and district court pleadings. *See Rivera v. Prudential Ins.,* 95 Civ. 0829, 1996 WL 637555, at *16 (N.D.N.Y. Oct. 21, 1996). "Fairness, not excessive technicality, is the guiding principle under . . . Title VII." *Gordon v. National Youth Work Alliance,* 675 F.2d 356, 360 (D.C.Cir.1982).

Although the issue is a close one, we are satisfied that both Nicholas and Johnson adequately stated continuing violations in their EEOC charges and the Complaint. Nicholas's EEOC charge asserts a course of discriminatory treatment throughout his employment: at NYNEX. Specifically, the charge alleges that since 1984, he has received evaluations from several racially biased supervisors and that "a pattern . . . of disparate treatment of Blacks" exists at NYNEX. (Nicholas's Charge of Discrimination dated Oct. 14, 1993.) The Complaint reiterates these contentions and cites, albeit in nonspecific terms, several instances in which Nicholas believes NYNEX unfairly denied him bonuses and awards. Although Nicholas's allegations in the EEOC filing and the Complaint are not a model of legal precision, we find that they give the EEOC sufficient opportunity to investigate this matter and provide defendant with adequate notice. The same can be said for Johnson's EEOC charge and that section of the Complaint asserting his claims.

A. Formal Policy or Practice

■ Plaintiffs contend that the continuing-violation exception should toll Title VII's time bar because, according to plaintiffs, there is evidence of an official, and ongoing discriminatory practice at NYNEX. Plaintiffs maintain, and defendant does not dispute, that NYNEX has promulgated no written policies or standards to govern either the promotion process at issue or the distribution of the awards which plaintiffs claim they have been improperly denied. Rather, promotions to the levels that Nicholas and Johnson covet were granted at the discretion of the NYNEX district manager. The district manager made these decisions based on his impressions of the candidates and on the recommendations of subordinate associate managers who worked with the candidates and had the opportunity to assess their technical, leadership, and interpersonal skills. (Kucich Dep. of Oct. 17, 1996 at 39–43.) These associate managers also apparently oversaw the distribution of awards. (*Id.* at 30–43.) Plaintiffs argue that the lack of clearly-articulated, objective criteria to govern promotions and awards in the upper ranks of NYNEX's Information Systems Department constitutes a specific and continuing practice of discrimination.

■ We are troubled by what appears to be the highly subjective, *ad hoc* nature of the challenged procedures. Indeed, many courts, including those in this Circuit, have recognized that subjective evaluations "may mask prohibited prejudice." *Verdell v. Wilson,* 602 F.Supp. 1427, 1439. "Objective criteria should be used to the maximum extent possible, and a subjective system must be carefully scrutinized for abuse." *Id.* These concerns are particularly acute where, as appears to be the case here, the evaluators are white. However, contrary to plaintiffs' contention, which is unsupported by any reference to case law, the absence of objective, expressly-defined promotion standards does not establish that NYNEX's informal system of granting promotions and awards at the managerial level is discriminatory.[5] Although there can be no assurance that particular individuals to whom an employer delegates authority will act without discriminatory intent, "an employer's policy of leaving promotion decisions to the unchecked discretion of ... supervisors should itself raise no inference of discriminatory conduct." *Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 990, 108 S.Ct. 2777, 2786, 101 L.Ed.2d 827 (1988). Unlike the facially improper retirement policy in *EEOC v. Home Ins.,* 553 F.Supp. 704, 712 (S.D.N.Y.1982), which expressly set an illegal retirement age, and the personnel policy in *Cornwell,* 23 F.3d at 697, which prohibited female aides at a correctional facility from working the "overnight shift," the procedures at issue here are neutral and thus, without more, do not amount to a discriminatory policy or practice.

■ Absent evidence of discriminatory intent, in an action alleging disparate treatment, a facially neutral rule or procedure cannot be relied upon to establish a continuing practice of intentional discrimination. *See Gomes,* 964 F.2d at 1333 (finding that plaintiff "has offered no evidence that the [challenged] rule had a discriminatory motive"). Similarly, without evidence that an otherwise neutral employment procedure disproportionately disadvantaged a protected group, that procedure will not be deemed a discriminatory practice for purposes of a disparate impact claim. *See Association Against Discrimination v. Bridgeport,* 647 F.2d 256, 274–75 (2d Cir.1981) (finding that non-job-related employment exam had disparate impact on hiring of minorities and thus constituted a continuing discriminatory practice); *Scelsa v. City Univ. of New York,* 806 F.Supp. 1126, 1143 (S.D.N.Y.1992). Here, plaintiffs have adduced no meaningful evidence either that the challenged procedures have a discriminatory motive[6] or that they treat one group more harshly than another.[7]

---

5. Plaintiffs' reliance on the EEOC's "Technical standards for validity studies," 29 C.F.R. § 1607.14, is misplaced. This section of the EEOC guidelines delineates the methods by which an employer may, after an adverse impact has been identified, establish that its employment selection procedures are a valid indicator of job performance. Section 1607.14 is specifically addressed to the technical standards that an employer must meet in conducting a validity study of its formal, scored employment procedures. Where, as here, an informal, unscored selection procedure is at issue, section 1607.14 is inapposite.

6. In their Memorandum of Law, plaintiffs, without citation to the record, allege that "two of the key managers in this case exhibited overt racial prejudice." (Pl. Mem at 11.) Presumably, plaintiffs refer to Nicholas's claims that "Bruce Brickmeier, my immediate supervisor in 1984, used the pejorative 'schvartzes' to refer to African-Americans," and "Nancy Fugosich, my supervisor from 1987 to 1988, was so ethnocentric that she revealed to all of us her belief that all Chinese were wonderfully clever. She then changed

her view to hating all Chinese." (Nicholas Aff. at ¶ 22, ¶ 23.) Even assuming the veracity of Nicholas's claims, these two episodes do not provide a factual basis upon which a reasonable jury could conclude that NYNEX's promotion and award procedures were the product of racial animus.

7. Plaintiffs aver only that "few African–Americans have reached first-level manager (grade 22), virtually none have reached second-level manager (grade 21), and absolutely none have reached third-level manager (grade 30)." (Nicholas Aff. at ¶ 38; Johnson Aff. at ¶ 41.) However, plaintiffs' Complaint does not include a disparate impact claim, and plaintiffs offer no evidence defendant's selection procedures have resulted in a pattern of promotions in which blacks were selected in lower numbers than would have been selected from the pool of qualified persons if there were no discrimination, as plaintiffs must to prevail on a disparate-impact theory. *See Scelsa v. City University of New York,* 806 F.Supp. 1126, 1143. Nor do we find plaintiffs' claim that blacks as a group scored significantly lower in

### B. Specific and Related Instances of Discrimination

■ Plaintiffs contend that the wrongs they have allegedly suffered constitute a series of related incidents that amounts to a discriminatory practice attributable to NYNEX. Defendant counters that plaintiffs' theory must be rejected because plaintiffs cannot identify a specific discriminatory policy or mechanism by which they have been disadvantaged.

As several courts in this Circuit have remarked, the continuing-violation doctrine, and in particular the question of when the doctrine applies absent a formal discriminatory mechanism, is among the more confusing and inconsistent areas of discrimination law. *See Davis v. City Univ. of New York,* 94 Civ. 7277, 1996 WL 243256, at *11 (S.D.N.Y. May 9, 1996); *McKenney v. New York City Off-Track Betting Corp.,* 903 F.Supp. 619, 622 (S.D.N.Y.1995). In *Lambert,* the Second Circuit found that the continuing-violation doctrine is limited to "specific discriminatory policies or mechanisms...." *Lambert,* 10 F.3d at 53. The court further observed that multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation. *Id.* However, the Second Circuit subsequently refined this analysis when it declared in *Cornwell* that "specific and related instances of discrimination tolerated by an employer over a sufficient period" may be evidence of a continuing violation. *Cornwell,* 23 F.3d at 704. Consistent with *Cornwell,* the Second Circuit has recently reiterated that discrete incidents of discrimination that are not the result of an identifiable discriminatory policy or practice will not ordinarily amount to a continuing violation, "unless such incidents are specifically related and are allowed to continue unremedied for 'so long as to amount to a discriminatory policy or practice.'" *Lightfoot,* 110 F.3d at 907 (quoting *Van Zant,* 80 F.3d at 713).

In light of the Second Circuit's post-*Lambert* jurisprudence, we reject defendant's assertion that plaintiffs' claim must fail absent evidence of a formal discriminatory policy or practice. The question thus arises whether the acts relied upon by plaintiffs constitute specific and related instances of discrimination tacitly condoned by NYNEX, which would establish a continuing violation or whether they are discrete incidents of discrimination, which would not. One court in this Circuit has characterized the distinction thus: "to qualify as a series of related acts, the events ... must not be isolated and sporadic outbreaks of discrimination, but a dogged pattern." *Sunshine v. Long Island Univ.,* 862 F.Supp. 26, 29 (E.D.N.Y.1994).

In the instant case, plaintiffs contend that they have been repeatedly denied promotions and awards over the course of their employment at NYNEX. However, plaintiffs have failed to offer any support, other than their own supposition, for the claim that these denials were part of a pattern of racial bias. The evidence plaintiffs rely upon simply does not demonstrate the necessary connection between plaintiffs' failure to receive promotions or awards and a racial animus sufficient to justify the inference that NYNEX has endorsed a policy of discrimination. *See Lightfoot,* 110 F.3d at 907 ("[plaintiff] has presented no evidence to support his claim of a discriminatory policy or a connection between his job reassignments and a discriminatory animus"); *see also Lloyd,* 879 F.Supp. at 400 (finding that allegedly discriminatory incidents were not related, in part, because "Plaintiff relies solely upon the fact that over the term of her employment, she did not receive certain promotions, which instead went to Caucasians").

In addition, courts have consistently treated the failure to promote as a discrete act; one that is more in the nature of an isolated employment decision than a persistent pattern. *Pauling v. Secretary of the Interior,* 960 F.Supp. 793, 801–02 (S.D.N.Y.1997) ("Demotion, failure to promote, and termination have all been deemed discrete acts); *Samuel*

---

the "tripleting" evaluation process to be relevant. As plaintiffs point out, NYNEX did not adopt this process until late 1993. (Pl. Mem at 4.) Thus, it

is within the statute of limitations period and has little bearing on plaintiffs' continuing-violations claim.

*v. Merrill Lynch Pierce Fenner & Smith,* 771 F.Supp. 47, 49 (S.D.N.Y.1991) ("As decided by several courts in this Circuit, a number of incidents of failure to promote cannot, as a matter of law, constitute a 'series of related acts.'"); *see also Lightfoot,* 110 F.3d at 907 (finding that alleged demotions and denials of pay-grade increases were completed acts not continuing in nature); *but see Williams v. Chase Manhattan Bank, N.A.,* 728 F.Supp. 1004, 1007 (S.D.N.Y.1990) (stating that "since [plaintiff] alleges a series of related discriminatory events including several denials of the same promotion, her complaint is deemed one of continuing violations"). The same can be said of defendant's decisions not to award bonuses to plaintiffs.

Here, plaintiffs have adduced no evidence tending to connect the promotion or award denials except that these seemingly separate and discrete decisions involved the plaintiffs and that they were all to the plaintiffs' detriment. Plaintiffs rely upon the fact that they did not receive promotions and bonuses, which went instead to white employees.[8] However, plaintiffs' assertion that "[t]he denials of promotion, awards and fair evaluations are intimately interrelated as they inevitably influence one another in cyclical fashion," (Pl. Mem. at 14.), is simply inadequate to justify the conclusion that they reflect a continuing discriminatory practice chargeable to NYNEX.[9] Moreover, plaintiffs presumably had notice of NYNEX's decisions not to award them promotions and

bonuses at some point shortly after those decisions occurred. Although we are not insensitive to the hard choices that an aggrieved employee faces in determining whether to commence litigation against his or her employer, plaintiffs have offered no evidence to support the conclusion that a reasonable employee would not have sued earlier under the circumstances presented here. *See Van Zant,* 80 F.3d at 713.

Accordingly, we conclude that the plaintiffs have provided an inadequate basis upon which a reasonable finder of fact could infer any continuing violation on the part of NYNEX. There are no compelling circumstances to warrant the application of this "disfavored" doctrine, *Johnson v. Frank,* 828 F.Supp. 1143, 1150 (S.D.N.Y.1993), to salvage plaintiffs' otherwise stale claims.

### C. New York's Human Rights Law

New York courts rely on federal law when evaluating claims under the Human Rights law. *See Van Zant,* 80 F.3d at 714; *Brown v. Time, Inc.,* 95 Civ. 10081, 1997 WL 231143, at *6 (May 7, 1997); *Nielsen v. United Parcel Serv.,* 210 A.D.2d 641, 619 N.Y.S.2d 844, 846 (3 Dept. 1994). Thus, we reject plaintiffs' continuing-violation claim under state law for the same reasons articulated above. However, unlike Title VII's 300–day rule, the statute of limitations for actions premised on New York's Human Rights law is three years from the date on which the cause of action

---

**8.** The following exchange between Nicholas and counsel for defendant reveals the essence of plaintiffs' continuing-violation theory:

Q. [W]hat is the basis for you saying that you were not selected because of race?

A. He got the job, I didn't.

Q. You're black and he's white?

A. That's correct.

Q. Is there any other evidence or factor that serves as the basis for your belief that you didn't get the job because of your race?

A. Not that I know of at this point. (Nicholas Dep. of Apr. 10, 1996 at 197; *see* Dep. at 211.)

**9.** In assessing continuing-violations claims, courts have considered it relevant that the challenged promotion decisions were not all made by the same individuals. *Neilson v. Colgate–Palmolive,* 94 Civ. 7643, 1997 WL 297051 at *1

(S.D.N.Y. June 4, 1997); *Lloyd,* 879 F.Supp. at 400. In *Lloyd,* for example, the court found that the involvement of different supervisors acting independently with respect to several of the decisions not to promote the plaintiff militated against a finding that those decisions were related. Here, although it appears that plaintiffs reported to numerous supervisors during their employment, it is unclear how many different district mangers actually made the challenged promotion and award decisions. In any case, we do find the identities of the decision makers highly relevant to the issue of whether the employer has permitted "related instances of discrimination ... to continue unremedied for so long as to amount to a discriminatory policy." *Cornwell,* 23 F.3d at 704. The question of who made the employment decisions has little direct bearing on whether those decisions are substantively and temporarily connected in such a way as to support a finding that the employer tacitly endorsed a discriminatory policy.

accrued. *Van Zant*, 80 F.3d at 714 (citing N.Y.C.P.L.R. 214(2)); *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983). Plaintiffs initiated this action on July 24, 1994. Therefore, only those claims that accrued after July 24, 1991 may be pursued. *See Samuel v. Merrill Lynch Pierce Fenner & Smith*, 771 F.Supp. 47, 49 (S.D.N.Y.1991).

## CONCLUSION

For the foregoing reasons, defendants' motion for partial summary judgment is granted. Plaintiffs' cross-motion is denied.

SO ORDERED.