**Stanley V. GRAAF, Plaintiff,**

v.

**NORTH SHORE UNIVERSITY HOSPITAL; John Gallagher; Victor Composti, in his individual and official capacities; Vincent Tulimiero, in his official and individual capacities; and Anthony Grasso, in his official and individual capacities; Defendants.**

No. 97 Civ. 0515(CBM).

United States District Court,
S.D. New York.

April 7, 1998.

Daniel Cherner, Law Offices of Daniel Cherner, New York, NY, for Plaintiff.

Peter D. Stergios, Epstein Becker & Green, P.C., New York, NY, for Defendants.

## OPINION

MOTLEY, District Judge.

This opinion addresses defendant North Shore University Hospital's ("North Shore's") Fed.R.Civ.Proc. 12(b)(6) motion to dismiss plaintiff Stanley V. Graaf's ("Graaf's") lawsuit against it. Graaf has sued under numerous causes of action, namely, Title VII, the Americans with Disabilities Act (ADA), 42 U.S.C. § 1981, § 1985, and § 1986, and various state law claims. For the reasons discussed below, North Shore's motion is GRANTED, in part, and DENIED, in part.

## BACKGROUND

Plaintiff, Stanley V. Graaf, is an Aruban citizen of West Indian descent residing in the United States and married to a white citizen of the United States. Defendant North Shore Hospital was Graaf's employer from 1979 until 1993, when he was terminated by defendant. Graaf had begun his employment with defendant in April of 1979 as a trainee in the Carpenter's Shop but he was reassigned in 1981 to the Maintenance Shop in defendant's Engineering and Maintenance Department and was allegedly replaced by a white employee with less experience than plaintiff. Moreover, Graaf alleges that a white employee in the Carpenter's Shop had told him that he would not work with a black person and that he would rather work with the less experienced white employee.

Graaf alleges that in 1983, while he was in the Engineering and Maintenance Department, he was directed to clean a shed. Graaf further alleges that defendants Tulimiero and Gordon approached him and taunted him by telling him that he looked like a "black

hairy monkey in a cage in need of a banana." Compl., ¶ 16. Graaf alleges that when he complained of this incident to the Director of the Department, the Director told him that defendants Tulimiero and Gordon were his supervisors and ordered him to do what he was told.

According to Graaf, this was only the beginning of a pattern of discrimination that continued until his termination in 1993. Among other things, Graaf alleges (1) that defendant Tulimiero threatened to assault him at an office party at which he was dancing with a white woman, (2) that racial epithets had been spray-painted onto his locker, (3) that he was repeatedly passed over for promotions, (4) that when he complained of this discrimination to the president of defendant North Shore, defendant John Gallagher, defendant Gallagher accused plaintiff of being too sensitive, (5) that defendant Tulimiero improperly refused to give plaintiff a raise he had been promised, (6) that defendant Tulimiero made a number of discriminatory comments to plaintiff's wife, urging her to leave him, and (7) that when he was having an operation after being injured on the job and unable to perform his employment duties, he was terminated for allegedly discriminatory reasons.

Graaf claims that defendants have discriminated against him on the basis of his race, color, and national origin in violation of the Civil Rights Act of 1964. Plaintiff further seeks damages under 42 U.S.C. § 1981, § 1985, § 1986, and the Americans with Disabilities Act. Finally, plaintiff seeks relief under a number of pendent state law claims.

## ANALYSIS

A complaint should not be dismissed under Rule 12(b)(6) unless it appears beyond a doubt that plaintiff can prove no set of facts in support of his or her claim which would entitle him or her to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Moreover, when passing on a motion to dismiss, the court must accept the allegations in the complaint as true and construe them in favor of the pleader. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90

(1974); *Dwyer v. Regan,* 777 F.2d 825 (2d Cir.1985).

## I. *Graaf's Federal Causes of Action*

### A. The ADA Claim

■ Graaf has brought a claim under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* Under the ADA, a plaintiff must establish a prima facie case by showing (1) that he is an individual with a disability within the meaning of the act; (2) he is otherwise qualified to perform the job; and (3) he was discriminated against or discharged because of the disability. *See Wernick v. Federal Reserve Bank of New York,* 91 F.3d 379, 383 (2d Cir.1996). Graaf stated that he suffered a back injury which forced him temporarily to leave work; he does not claim that his injury was permanent. Courts within this circuit, and the vast majority of courts elsewhere which have considered the question, have held that temporary disabilities do not trigger the protections of the ADA because individuals with temporary injuries are not disabled persons within the meaning of the act. *See Boyce v. New York City Mission Society,* 963 F.Supp. 290, 296–297 (S.D.N.Y.1997) (noting that "ADA interpretive guidelines further clarify the physical conditions intended to be within the scope of the Act by stating 'temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities' "); *Stronkowski v. St. Vincent's Medical Center,* 1996 WL 684407, *7 (D.Conn. Aug.1, 1996) ("[T]emporary injuries, like Stronkowski's (back) injury, without substantial limitations and permanent effects, do not warrant the protections of the ADA"); *see also Davis v. Bowes,* 1997 WL 655935, *15 (S.D.N.Y.1997) ("designating a transient or temporary illness as a handicap is inconsistent with congressional intent.").

■ The ADA guideline referenced in the *Boyce* opinion lists broken limbs, sprained joints, concussions, appendicitis, and influenza as examples of temporary non-chronic impairments. *See* 29 C.F.R. Pt. 1630.2(j) App. To be sure, a serious back injury, like the one incurred by Graaf, can result in chronic impairments and is probably more serious

than a broken limb or a sprained joint. However, plaintiff has stated that he is able to return to work. Due to the temporary nature of Graaf's injury, his claim under the ADA must be dismissed.[1]

## B. The Title VII Claim

■ Defendants' have moved to dismiss Graaf's Title VII claim for want of timeliness. Under Title VII, plaintiffs are required to file their claims before the EEOC within 300 days. *See United Air Lines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977); 42 U.S.C. § 2000e–5(e). Graaf filed his charge with the New York State Division of Human Rights ("NYSDHR") on April 22, 1993. Three-hundred days back from that is June 26, 1992. The overt racial incidents that Graaf alleges all occurred before June 26, 1992, as the last act referenced in the complaint occurred on April 28, 1992. However, plaintiff alleges that he was terminated on February 26, 1993, a date which falls within the limitations period. This sequence of events raises two questions: one, has plaintiff alleged that his discharge was motivated by race as well as disability; if yes, then does the "continuing violation" doctrine apply to link the other events with each other and with the termination and, therefore, allow plaintiff to obtain relief for the alleged racial discrimination which occurred before June 26. The court holds that the complaint, construed favorably on plaintiff's behalf, alleges a discriminatory discharge based on factors other than disability and that the continuing violation doctrine does apply to save Graaf's Title VII claim.

Looked at in the light most favorable to plaintiff, the complaint does state a claim that the termination was based on factors other than disability alone. *See* Compl., ¶ 81 ("[D]efendants . . . force[d] his wrongful termination, based, *in part,* on plaintiff's disability") (emphasis added). The complaint, examined overall, alleges that the different types of discrimination were linked: plaintiff was doing the sort of work likely to injure his back because he was transferred and discriminatorily passed over for promotions. Thus, the court holds that it is reasonable to infer that plaintiff alleged that his termination was motivated by the sort of racial animus that permeated his entire employment relationship.

■ Next, the court examines the question of whether the allegations of race and national origin discrimination occurring prior to June 26, 1996 can be maintained. Generally, of course, the "continuing violation" doctrine is implicated when there are institutionalized policies and practices, such as employment tests. *See Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 907 (2d Cir.1997). However, some courts within the circuit have allowed the continuing violation doctrine to save otherwise time-barred claims when "no more was shown than a discriminatory policy directed towards a single plaintiff." *Brennan v. City of White Plains et al.,* 1998 WL 75692 (S.D.N.Y. Feb.20, 1998) (citing cases). The Second Circuit has not addressed the question of whether discrimination toward a single plaintiff can constitute a policy for continuing violation purposes and, absent this direction, there is no reason not to follow the cases which hold that "where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice" then there is a continuing violation. *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994); *see also Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708 (2d Cir.1996), *Wise v. New York City Police Dep't,* 928 F.Supp. 355 (S.D.N.Y. 1996).

Graaf alleged examples of "continuous and ongoing" racial discrimination in his complaint. ¶ 46. He did not allege that the discrimination was continuous and ongoing in his EEOC charge as he should have but "it would be overly formalistic to reject a civil rights plaintiff's continuing violation claim simply because that plaintiff did not include

---

**1.** Plaintiff's pendent claim of disability discrimination under the New York Human Rights Law is also dismissed, as his back injury is also not a protected injury under this statute. *See, e.g., McAuliffe v. Taft Furniture Warehouse & Show-room, Ltd.,* 116 A.D.2d 774, 497 N.Y.S.2d 170 (3d Dep't 1986) (employer's dismissal of at-will employee after she was unable to work for nearly two months did not violate Human Rights Law).

the phrase 'continuing violation' in the EEOC charge and district court proceedings." *Brennan,* 1998 WL at *8 (citing *Nicholas v. Nynex,* 974 F.Supp. 261, 266 (S.D.N.Y.1997)). Thus, Graaf's Title VII claim can be maintained and defendants' motion to dismiss this claim is denied.

## C. The Claims under 42 U.S.C. § 1981, § 1985, and § 1986

Defendants have moved to dismiss Graaf's claims under 42 U.S.C. §§ 1981, 1985, and 1986 on a number of grounds: one, they are time-barred; two, Section 1985 cannot be used to redress discrimination prohibited by Title VII; three, a corporate defendant cannot conspire with its officers, agents, or employees under Section 1985; and, four, a claim predicated upon Section 1986 must fail absent a valid cause of action under Section 1985. On at least two of these grounds, Graaf's action under these federal statutes must indeed be dismissed.

It is well-settled that plaintiffs cannot bring § 1985 actions "based solely upon claims of employment discrimination." *Smith v. Local Union 28 Sheet Metal Workers,* 877 F.Supp. 165, 172 n. 12 (S.D.N.Y. 1995) (citing *Great American Federal Savings & Loan Ass'n v. Novotny,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979)). Absent a § 1985 claim, a plaintiff cannot bring a § 1986 claim in this circuit. *See Graham v. Henderson,* 89 F.3d 75, 82 (2d Cir.1996). Graaf's claims under § 1985 and § 1986 are hereby dismissed.

Graaf's § 1981 claim is time-barred. Though there is no statute of limitations specified in § 1981, which prohibits racial discrimination in the making and enforcement of private contracts, the time for filing a § 1981 action in New York is within three years of the discriminatory conduct. *See, e.g., Keyse v. California Texas Oil Corp.,* 590 F.2d 45, 47 (2d Cir.1978). The filing of administrative charges with the EEOC or the NYSDHR does not toll the limitations period for § 1981 claims. *See Woods v. Dunlop Tire Corp.,* 972 F.2d 36, 40 (2d Cir.1992) (citing *Johnson v. Railway Express Agency,*

421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), for the proposition that "commencement of EEOC proceedings for a plaintiff's Title VII claim did not toll the statute of limitations applicable to the plaintiff's cause of action under 42 U.S.C. § 1981" and reiterating the Court's reasoning that "the section 1981 claim could have been asserted by the plaintiff at any time during the pendency of the EEOC proceeding"); *Cates v. Trans World Airlines, Inc.,* 561 F.2d 1064, 1072 (2d Cir.1977) ("the timely filing of a charge of employment discrimination with the EEOC under Title VII does not toll. the running of the statute of limitations applicable to an action based on the same facts but instituted under 42 U.S.C. § 1981"); *Connell v. J.P. Morgan Inv. Management, Inc.,* 1994 WL 132148, *5 (S.D.N.Y.1994).

Plaintiff learned of his termination in March, 1993 and did not file his lawsuit until January, 1997, more than three years later. Regardless of the fact that he filed his charge with the NYSDHR in April, 1993, his § 1981 claim is time-barred. Graaf argues that there should be an equitable tolling, however, because during a March, 1994 hearing before the New York State Division of Human Rights, defendants re-characterized the termination as a refusal to return. to work. According to Graaf, this action was a separate injury which warrants an equitable tolling. His argument has no seeming merit, and is offered without any case citations.

## II. *State Law Issues*

## A. Negligence, Breach of Employment Contract, and Fraud

Most of Graaf's pendent state-law claims must be dismissed [2]. Graaf's vague negligence claim is clearly precluded by the existence of New York's Workers' Compensation Law. *See Torres v. Pisano,* 116 F.3d 625, 640–641 (2d Cir.1997) (plaintiff cannot bring negligence claim alongside a sexual harassment claim because negligence claims, as opposed to intentional tort claims, against employers are "clearly" barred by the "exclusive remedy" of Workers' Compensation).

---

**2.** Graaf withdrew his intentional infliction of    emotional distress claim on December 24, 1997.

■ Graaf's claim for breach of employment contract cannot stand because Graaf has not pleaded any facts which suggest any abrogation of the general employment law that employees are employed at will. *See Yaris v. Arnot–Ogden Memorial Hospital,* 891 F.2d 51, 52 (2d Cir.1989) (the presumption of at-will employment must be rebutted by proof that an employer expressly agreed to limit its right to discharge an employee ... a court must look to the totality of the attendant circumstances to determine whether the employer agreed to terminate only for cause). In support of his claim for breach of contract, plaintiff refers to an excerpt from defendant North Shore's "Personnel Policy Manual" which is no more than a statement of equal employment; it makes no references to lifetime or permanent employment and makes no commitment to only firing for cause. Even assuming the truthfulness of Graaf's allegation that he relied on defendants' representations that he would receive "all such remuneration, benefits, and promotions to which he was entitled", this assurance is not tantamount to any limitation of the employer's right to discharge its employees. Compl., ¶ 106.

■ Finally, Graaf's fraud claim is too vague to maintain. In order to satisfy the pleading requirements of a fraud claim, plaintiffs must specify the time, place, speaker, and sometimes even the content of the alleged misrepresentation. *See Luce v. Edelstein,* 802 F.2d 49, 52 (2d Cir.1986). Graaf's complaint alleges that defendants made false and misleading statements to him and that plaintiff "received these statements as his only guidelines and description as to his role" and "was led to believe that he would be supported in his work, and also that he would not experience discrimination and/or retaliation." Compl., ¶¶ 110–115. This fraud section of the complaint is clearly too vague to meet the pleading requirements of Fed. R.Civ.Proc. 9.

### B. Plaintiff's Claim under the New York State Human Rights Law Against John Gallagher for Race and/or National Origin Discrimination

■ Defendants argue that the above allegation fails to state a claim because Mr. Gallagher, the CEO and president of North Shore, played no role in plaintiff's termination or the discriminatory conduct allegedly directed toward plaintiff and has no independent personal knowledge of the underlying facts in this case. Under the New York State Human Rights law, an individual may be subject to liability if he or she is an "employer" (i.e., has an ownership interest or the power to do more than carry out personnel decisions made by others) or if the individual has aided and abetted in the discriminatory conduct. *See Patrowich v. Chemical Bank,* 63 N.Y.2d 541, 542, 483 N.Y.S.2d 659, 473 N.E.2d 11 (1984); N.Y.Exec.Law § 296(1). The court holds that Gallagher can be subject to liability in this case because he is an employer within the meaning of the statute.

Defendants cite cases in which named defendants had actions against them dismissed on the grounds that the plaintiffs did not plead any facts regarding defendants' involvement in the creation, design, or implementation of the discrimination. However, Gallagher was not a mere human resources officer—charged with executing but not making policies—he was the CEO and president of the company. Gallagher had the power to do more than carry out personnel decisions made by others and he had personal knowledge insofar as Graaf himself complained to him (as distinguished, for example, from a situation where a personnel officer briefs the president after a suit is filed). *See* Compl., ¶¶ 26–32 (Gallagher allegedly told Graaf he was being too sensitive when Graaf allegedly related hearing such comments as "[w]e work him like a slave and will work him like a slave."). Gallagher, as an employer, had the power to change the situation and, by responding to Graaf the way he allegedly did, is subject to liability. Thus, the motion to dismiss the New York State Human Rights Law claim against Gallagher is denied.

### CONCLUSION

For the foregoing reasons, defendants' Fed.R.Civ.Proc. 12(b)(6) motion to dismiss is GRANTED as to plaintiff's claims under the ADA, New York Executive Law § 292(21),

42 U.S.C. § 1981, 42 U.S.C. § 1985, 42 U.S.C. § 1986, the torts of fraud and negligence, and breach of employment contract. The motion is DENIED as to plaintiff's Title VII claim and the state law claim against Gallagher.