**Sylvia RECTOR, Plaintiff,**

v.

**Osram SYLVANIA, Defendant.**

**No. 01 CIV. 11639(CM).**

United States District Court,
S.D. New York.

Sept. 24, 2003.

Shirley Rector, Pine Bush, NY, pro se.

Julie Kuschner Evans, Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, Jeremy Gittler, Wilson, Elser, et al., New York City, Paul F. Beckwith, KennetH J. Martin, Cooley Manion Jones, LLP, Boston, MA, for Osram Sylvania.

MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DISMISSING COMPLAINT

MCMAHON, District Judge.

Plaintiff pro se, Sylvia Rector, sues her former employer, Osram Sylvania ("Sylva-

nia"), alleging that she was fired in violation of her rights under the Americans with Disabilities Act, 42 U.S.C. 12101, et. seq. The plaintiff had tendonitis in her left shoulder which required her to have surgery and to take time off from work. Because the plaintiff informed Sylvania that her injury was not work related, she received 26 weeks of short term disability benefits. After receiving 26 weeks of short term disability, the plaintiff (for the first time) alleged that her injury was work related and filed a workers compensation claim. While her workers compensation claim was pending, Sylvania provided the plaintiff with 23 weeks of long-term disability benefits. Unfortunately, in April, 1999, when the plaintiff was finally cleared to return to work without restrictions, Sylvania was conducting a reduction in force and there was no position available for the plaintiff.

Although the plaintiff has barely any recollection of her injury, its duration, her diagnosis or her treatment (as discussed below), it is clear from her testimony and the testimony of her doctors that she was not disabled within the meaning of the Americans With Disabilities Act ("ADA"). There being no disputed issue of material fact, and defendant being entitled to judgment as a matter of law, the defendant's motion for summary judgment dismissing the complaint is granted.

**FINDINGS OF FACT**

The following facts are undisputed.[1]

Osram Sylvania manufactures and sells commercial and residential lighting prod-

---

**1.** Plaintiff did file a response to the motion. It did not contain a Statement of Undisputed Facts pursuant to Local Rule 56.1 and it did not specifically dispute the facts as set forth by defendant. Although under the law in this Circuit I could deem all the defendant's Un-

disputed Facts admitted for that reason alone, *Giannullo v. City of New York,* 322 F.3d 139 (2d Cir.2003), I have chosen to cull plaintiff's response to see if I can find any disputed issue of material fact. There is none.

ucts. The plaintiff, Shirley Rector ("Rector"), began working for Sylvania in 1988 at its facility in Maybrook, New York, and worked there for ten years as a machine operator and a packer. (Rector Deposition ("Rector Dep."), 15:17–21; 24:8–21).

On or about May 14, 1998, the plaintiff called Sylvania human resources to inform Sylvania that she would be out of work due to calcium deposits of her left rotator cuff. (Affidavit of Joanne Sconzo dated Mar. 24, 2003 ("Sconzo Aff."), ¶ 2; Rector Dep. 52:8–11). During this conversation, the plaintiff informed Ms. Sconzo that her injury was *not* work related. (Sconzo Aff., ¶ 2).

The plaintiff subsequently provided Sylvania with a doctor's note indicating that she was to be on full disability until further notice. (Sconzo Aff., ¶ 4, Ex. 2). Although the plaintiff testified that she did not recall if she ever had pain in her left shoulder prior to May 14, 1998 (Rector Dep. 47:22–24), she was treated for a shoulder injury in May, 1997. (Deposition of Dr. Govindlal Bhanusali ("Bhanusali Dep."), 10:18–23; Dr. Bhanusali's report dated May 14, 1997). The plaintiff admitted that her shoulder was previously injured during an assault, but she testified that she couldn't recall when the assault occurred, where the assault occurred, who assaulted her, how she was assaulted, or whether she filed criminal charges in regard to this assault. (Rector Dep. 48:5–49:25).

Ms. Rector received short term disability benefits from May 15, 1995 to November 12, 1998. (Sconzo Aff. ¶ 5). The plaintiff had received information from Sylvania as early as 1995 indicating that short-term disability benefits were available only to employees who had suffered non-work related injuries. (Rector Dep. 31:7–32:8, 34:19–35:20). When the plaintiff's short term disability ended, she received long term disability benefits from November 13, 1998 through April 24, 1999. (Sconzo Aff. ¶ 6).

While out on short term disability, the plaintiff received treatment for her left shoulder. The plaintiff was diagnosed by Dr. Sunitha Polepalle with tendonitis of her rotator cuff.[2] (Deposition of Dr. Polepalle ("Polepalle Dep.") 14:19–15:19). The plaintiff was then referred to Dr. Bhanusali, who diagnosed the plaintiff with impingement syndrome of her left shoulder, of which tendonitis is a factor. (Bhanusali Dep. 19:12–25, 22:2–8). Dr. Bhanusali operated on the plaintiff's shoulder on August 25, 1998 and he successfully corrected the plaintiff's impingement syndrome. (*Id.* at 25:5–19, 49:9–11). Dr. Bhanusali testified that, after the surgery, plaintiff no longer had impingement syndrome of her left shoulder, and the continued pain she experienced had been improving. (*Id.* at 49:12–22, 59:22–60:8).

Although plaintiff could not recall if she had physical therapy after her surgery (Rector Dep. 71:5–14), Dr. Bhanusali testified that the plaintiff did undergo physical therapy. (Bhanusali Dep. 34:4–12). Additionally, Dr. Bhanusali and Dr. Polepalle continued to see the plaintiff to evaluate her condition. (Bhanusali Dep. 38:4–39:24, 50:19–23, 56:6–24, 64:11–23; Polepalle Dep. 34:12–22, 40:17–41:6, 49:14–23). Both doctors reported that the plaintiff's range of movement and condition was continually improving. (Bhanusali Dep. 39:8–40:18,

---

**2.** Although the plaintiff's administrative complaint with the New York Division of Human Rights alleged that she suffered from Rotor Cuff Tendonitis (Defendant's Memorandum of Law in Support of Its Motion For Summary Judgment, Exhibit F), the plaintiff testified that she could not recall ever being told that she had tendonitis in her left shoulder. (Rector Dep. 71:15–22).

46:6–47:9, 54:4–18, 68:6–17, 82:5–9; Polepalle Dep. 35:4–36:8, 49:14–50:5, 52:19–54:14).

In October, 1998, the plaintiff was released by her doctor to work light duty. (Polepalle Dep. 36:25–38:22; Defendant Exhibit G, Note dated October 30, 1998 from Dr. Polepalle). The plaintiff's condition continued to improve after October, 1998, to the point were Dr. Polepalle considered her shoulder "nearly normal." (Polepalle Dep. 56:10–14). At that time, in April, 1999, Dr. Polepalle concluded that the plaintiff was fully capable of returning to work without restrictions, and she gave the plaintiff a note dated April 20, 1998 to that effect. (Sconzo Aff., Ex. 3).

At the time the plaintiff was released to work without restrictions, Sylvania was undergoing a reduction in force at its Maybrook facility. (*Id.* at ¶ 8). Therefore, Sylvania informed the plaintiff by letter dated April 29, 1999 that it did not currently have any open positions available for her. (*Id.* at paragraph 9). The plaintiff sought and secured alternative employment in or about May, 1999. (*See* Def. Mem., Ex. H, Plaintiff's Answers to Interrogatories, at Response Number 3). Since returning to work in June, 1999, the plaintiff doesn't recall missing any work due to her shoulder injury. (Rector Dep. 157:16–58:13).

In or about June, 1999, the plaintiff filed an administrative complaint against Osram alleging disability discrimination. (*See* Def. Mem., Exhibit F, Complaint). When that complaint was dismissed, the plaintiff subsequently filed this action under the ADA.

## ANALYSIS

*Standard for Summary Judgment*

Under Fed.R.Civ.P. 56(c), a party is entitled to summary judgment if the moving party establishes that there is no genuine issue of material fact and that he or she is entitled to summary judgment as a matter of law. "[T]he moving party bears the initial burden of establishing that there are no genuine issues of material fact, once such a showing is made, the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir.2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986)). In addition, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). However, "[u]nsupported allegations will not suffice to create a triable issue of fact." *Huskins v. Pepsi Cola of Odgensburg Bottlers, Inc.*, 180 F.Supp.2d 347, 350 (N.D.N.Y.2001) (citing *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir.1995)). The court will "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor ... and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir.1995) (*internal citations and quotations omitted*).

While a pro se party's pleadings should be read liberally, "proceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions, unsupported by evidence, are insufficient to overcome a motion for summary judgment." *Burnett v. ESL Fed. Credit Union*, 198 F.Supp.2d 307, 314 (W.D.N.Y. 2002).

Even taking the plaintiff's allegations in a light most favorable to her, there are no

genuine issues of fact in regard to the plaintiff's failure to establish her prima facie case. Based on the plaintiff's own admissions, and the testimony of her treating physicians, the plaintiff is not disabled under the provisions of the ADA. Accordingly, Sylvania is entitled to summary judgment on the plaintiff's claim under the ADA.

*The Undisputed Facts Reveal That the Plaintiff Cannot Prove a Prima Facie Case of Employment Discrimination Under the ADA.*

■ Under the ADA, a plaintiff alleging employment discrimination bears the initial burden of establishing a prima facie case. *Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867, 869 (2d Cir.1998). In order to establish a prima facie case of disability discrimination, a plaintiff must show that: (1) her employer is subject to the ADA; (2) she suffers from a disability within the meaning of the ADA; (3) she could perform the essential functions of her job with or without reasonable accommodation; and (4) she has suffered an adverse employment action because of her disability. *Id.* at 869–70. Plaintiff cannot meet this burden because she cannot demonstrate that she suffers from a disability within the meaning of the ADA.

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of such individuals." 42 U.S.C. § 12102(2)(A). "Major life activities" include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(i). In determining whether an impairment is substantially limiting, Courts will look at "(i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long

term impact of or resulting from the impairment." *Colwell v. Suffolk County Police Dept.,* 158 F.3d 635, 643 (2d Cir.1998) (*quoting* 29 C.F.R. § 1630.2(j)(2)).

■ The plaintiff's temporary shoulder injury is not sufficient to qualify as a disability under the ADA. As the Second Circuit Court of Appeals stated in *Graaf v. N. Shore Univ. Hosp.,* 1 F.Supp.2d 318, 321 (S.D.N.Y.1998), "Courts within this circuit, and the vast majority of courts elsewhere which have considered the question, have held that temporary disabilities do not trigger the protections of the ADA because individuals with temporary injuries are not disabled persons within the meaning of the act". *Id.* at 321. Broken limbs, sprained joints, concussions, appendicitis, and influenza are examples of temporary non-chronic impairments. *Id.* (citing 29 C.F.R. § 1630.2(j)).

In *Graaf,* the plaintiff suffered a back injury which caused him to miss work for a period of time. *Id.* In dismissing the plaintiff's ADA claim, the Court concluded that while a serious back injury could lead to chronic impairments, the temporary nature of the plaintiff's injury (as evidenced by the fact the plaintiff was able to return to work) precluded his claim under the ADA. *Id.* at 321–322; *see also Adams v. Citizens Advice Bureau,* 187 F.3d 315, 316–317 (2d Cir.1999)(stating that plaintiff's injuries which precluded him from working for three and one-half months was "too short in duration ... to be substantially limiting"); *Colwell v. Suffolk County Police Dep't,* 158 F.3d 635, 646 (2d Cir.1998), cert. denied, 526 U.S. 1018, 119 S.Ct. 1253, 143 L.Ed.2d 350 (1999) (holding temporary impairment of seven months not substantially limiting); *Williams v. The Salvation Army,* 108 F.Supp.2d 303, 312–13 (S.D.N.Y.2000) (asserting "temporary, non-chronic impairments of short duration, with little or no

long-term or permanent impact, are usually not disabilities")(internal citations omitted).

In the present case, Rector had a shoulder injury which required her to stop working in May, 1998. After having surgery on her shoulder, the plaintiff was cleared to return to work with restrictions on October 30, 1998 and without restriction by April, 1999. She testified that she has not missed any work due to her shoulder injury since she took up her new job in May 1999.

Thus, even accepting the plaintiff's version of the facts, she cannot show that she had more than a temporary inability to work after her surgery. Plaintiff's injury did not have the long term impact to qualify as a disability under the terms of the ADA. *See Fagan v. United Int'l Ins. Co.*, 128 F.Supp.2d 182, 185–86 (S.D.N.Y.2001) (holding temporary inability to work after surgery didn't have required long-term impact to qualify as disability under ADA).

In addition to the fact that the plaintiff's injury was temporary in nature, the plaintiff has not identified a major life activity that has been substantially impaired by her injury. When asked about the affect of her shoulder injury on her major life activities, the plaintiff testified that she couldn't recall if her shoulder injury affected her ability to walk, see, hear, speak or learn. (Rector Dep. 71:23–74:21). The plaintiff testified that her injury affected her ability to breathe because of "pain", but she admitted that she was able to breathe and never required assistance breathing. (*Id.* at 73:13–74:2). Additionally, the plaintiff alleged that her shoulder injury affected her ability to care for herself and perform manual tasks because she could not get dressed. (*Id.* at 74:6–14). Although she initially testified that she could not recall for how long of a period she was unable to dress herself, plaintiff subsequently testified that her inability to dress herself lasted "until surgery." (*Id.* at 75:9–22). The plaintiff testified that she didn't recall if she could dress herself after surgery, and that at times she has problems dressing herself. (*Id.* at 75:23–76:13). Lastly, the plaintiff testified that her shoulder injury affected her ability to work because of trouble "lifting groceries." (*Id.* at 76:17–77:18). Thus, the only major life activities that were arguably affected by her shoulder injury was her ability to care for herself because of her difficulty dressing and her ability to work. As discussed below, however, the plaintiff's allegations are not sufficient to establish that these major life activities were substantially limited.

Although almost any impairment may affect a major life activity in some manner, the ADA does not consider every impaired person to be disabled. *Ryan*, 135 F.3d at 870. In *Ryan*, the plaintiff alleged that her colitis substantially limited her ability to care for herself. *Id.* In analyzing the issue of substantial limitations, the United States Court of Appeals for the Second Circuit explained that "in assessing whether a plaintiff has a disability, courts have been careful to distinguish impairments which merely affect major life activities from those that substantially limit those activities." *Id.* In determining that the plaintiff's colitis did not substantially limit the plaintiff's ability to care for herself, the Court looked at the following three factors: (i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment. *Id.* at 871–872. Ultimately, the Court held that the plaintiff's colitis was not substantially limiting because (i) the severity of the plaintiff's colitis was limited because

even when it was systematic the plaintiff could still do a number of things to care for herself, such as get dressed, groom herself and make her way to work; (ii) the plaintiff's colitis only limited her ability to care for herself periodically; and (iii) the plaintiff did not present evidence demonstrating a significant long term residual effect on her ability to care for herself. *Id.* Thus, the Court concluded that the plaintiff in *Ryan* failed to demonstrate that her colitis substantially limited her ability to care for herself. *Id.*

In the present case, Rector's allegations regarding her ability to care for herself are significantly less severe than the plaintiff's in *Ryan.* First, Rector was only unable to dress herself for a limited period of time. Her difficulty dressing herself lasted "until surgery" and since then she has only "sometimes" had difficulty dressing herself. (Rector Dep. 75:20–76:3). Rector could not identify any other daily activity (such as feeding herself, driving, grooming or cleaning) that was limited by her shoulder injury—in fact she testified that she "couldn't recall" if she was able to feed herself after her shoulder injury. (*Id.* at 74:18–20).

Second, the duration of Rector's impairment was very limited. Plaintiff had surgery on her shoulder, received physical rehabilitation, was cleared to return to work, and in fact did go back to work.

Third, Rector has not introduced any evidence that her shoulder injury would have any permanent or long term impact on her ability to dress herself. In fact, Rector's doctor testified that after surgery and rehabilitation Rector's shoulder was "nearly normal." (Polepalle Dep. 55:19–56:14). Thus, it is clear that Rector's ability to care for herself was not substantially limited by her shoulder injury. *See Ryan,* 135 F.3d at 871–72.

Similarly, the plaintiff's allegation that her ability to work was affected is not sufficient to establish a substantial limitation of a major life activity. An impairment which disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one. *Boyce v. New York City Mission Soc'y,* 963 F.Supp. 290, 296 (S.D.N.Y.1997). In terms of the ability to work, the terms "substantially limits" means "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Id.* In *Boyce,* the United States District Court for the Southern District of New York held that although the plaintiff's condition (shortness of breath and chest pains) limited her ability to work at her job, it did not "substantially limit her ability to perform either a class of jobs or a broad range of jobs." *Id.* at 297.

In the present case, Rector admitted that she was capable of doing other jobs even with her shoulder injury. (Rector Dep. 77:6–78:23). Additionally, Rector was cleared to return to work without restrictions by her doctor, and the plaintiff did obtain employment after that clearance. Currently, the plaintiff doesn't recall missing any work at her new job due to her shoulder injury. (*Id.* at 157:16–158:16). Thus, the plaintiff's temporary inability to do one form of job did not substantially limit her ability to perform either a class of jobs or a broad range of jobs.

Accordingly, the plaintiff cannot establish that she is disabled under the provisions of the ADA, and Sylvania must be granted summary judgment.

### CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment must be granted.

The Clerk of the Court is directed to enter judgment dismissing the complaint, and to close the file.