Lis HANSEN, Plaintiff,

v.

DANISH TOURIST BOARD, Defendant.

No. CV 00–1419 (ADS).

United States District Court, E.D. New York.

May 19, 2001.

Somma, Zabell & Associates, LLP, Farmingdale, NY, Saul D. Zabell, of counsel, for the Plaintiff.

Haight Gardner Holland & Knight, New York City, Mary Lynn Nicholas, of counsel, for the Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This case arises out of claims by Lis Hansen ("Hansen" or the "plaintiff") that the Danish Tourist Board ("Tourist Board" or the "defendant") discriminated against her on the basis of her age and gender in regard to the terms, conditions, and privileges of her employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.* ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et. seq.* ("ADEA"), the New York State Human Rights Law, Executive Law § 290 *et. seq.* ("NYHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8–101 *et. seq.* ("City HRL"). Presently before the Court is a motion by the Tourist Board to dismiss the complaint in its entirety.

## I. BACKGROUND

The following facts are taken from the complaint. Hansen is a citizen of Denmark and a permanent resident of the United States. She is 60 years of age, having been born on February 19, 1941. Hansen began working for the Tourist Board in or about 1984. During the 14 years that she was an employee of the Tourist Board, she received "excellent performance appraisals, her attendance record was never criticized and she always received annual wage increases" (Complaint ¶ 12).

In or about 1995, the plaintiff traveled to Chicago on business with her supervisor, Jarl Boye–Moller ("Boye–Moller"). Hansen alleges that at one point during the trip, Boye–Moller invited himself into her hotel room, and she felt pressure to permit him to stay while she showered and changed for an evening business event. Boye–Moller's behavior led Hansen to believe that he had expectations of a physical relationship with the plaintiff. The plaintiff contends that she rebuffed all of Boye–Moller's advances. Hansen claims that since she rejected Boye–Moller, she did not receive the same wage increases as those received by similarly situated employees, her workload was increased, and her responsibilities were changed.

In June 1997, Boye–Moller promoted one Dorthe Hansen, a woman, to a supervisory position for which the plaintiff was a qualified candidate. Hansen contends that Dorthe Hansen was less qualified and had less seniority and experience than the plaintiff, but was approximately 20 years younger than she. According to the plaintiff, the Tourist Board had a history of promoting younger women and excluding older women. Hansen expressed her disappointment with the promotion decision to Boye–Moller and told him she thought "his decision was made for other than lawful business reasons" (Complaint ¶ 17). Boye–Moller related the plaintiff's allegations about the promotion decision to Dorthe Hansen.

In June 1998, Boye–Moller was moved from the Tourist Board's New York office and was replaced by Dorthe Hansen, who became the plaintiff's direct supervisor. The plaintiff claims that immediately fol-

lowing this second promotion, Dorthe Hansen began a campaign of harassment that was designed to force her to resign. The plaintiff became the only employee required to travel extensively. She also was subject to false complaints about her purported refusal to perform work and was ridiculed for wanting to spend time with her ailing husband. According to the plaintiff, this campaign of harassment was directed at her because of her age and gender and was in retaliation for her complaint to Boye–Moller about his allegedly unlawful conduct.

On September 14, 1998, the plaintiff was fired and was replaced with a younger woman who was in her thirties.

The plaintiff commenced this action by filing a complaint on March 13, 2000. The complaint raises eight causes of action. The first cause of action is a Title VII sex discrimination claim, and the second cause of action is a Title VII retaliation claim. In the third cause of action, the plaintiff claims that her rights under the ADEA were violated when the Tourist Board did not consider and promote her to a supervisory position and terminated her based on her age. The fourth cause of action is an ADEA retaliation claim. As a fifth cause of action, Hansen claims that the defendant's conduct violates the NYHRL, and the sixth cause of action is a NYHRL retaliation claim. The seventh cause of action asserts that the defendant's conduct violates the City HRL, and the eighth cause of action asserts discriminatory retaliation in violation of the City HRL.

Presently before the Court is a motion to dismiss, by the Tourist Board pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("Fed.R.Civ. P."). The defendant raises the following arguments: (1) the Tourist Board is exempt from lawsuits brought pursuant to the ADEA and Title VII by Danish citizens in the United States, because it is a foreign person not controlled by an American employer; (2) the Tourist Board is immune from suit under the Foreign Sovereign Immunities Act ("FSIA"); (3) the plaintiff did not raise the present retaliation and sex discrimination claims in her EEOC charge; (4) and the Court should not exercise supplemental jurisdiction over the plaintiff's state-law claims. The Tourist Board also moves to strike the plaintiff's jury demand on the ground that it is an "agency or instrumentality of a foreign state" under the FSIA, *see* 28 U.S.C. § 1603.

## II. DISCUSSION

### A. As to the Defendant's Claim that it is Not Subject to Suit Under the ADEA or Title VII

The Tourist Board argues that as a foreign person not under the control of an American employer, it cannot be sued under the ADEA or Title VII. In regard to the plaintiff's age discrimination claims, the Tourist Board refers to the portion of the ADEA that provides, "The prohibitions of this section shall not apply where the employer is a foreign person not controlled by an American employer." 29 U.S.C. § 623(h)(2). The Tourist Board buttresses its argument also by referring to *Robinson v. Overseas Military Sales Corp.,* 827 F.Supp. 915 (E.D.N.Y.1993), in which the Court interpreted 29 U.S.C. § 623(h)(2) to mean that "[i]t its clear that foreign corporations are not subject to the prohibitions of the ADEA." *Robinson,* 827 F.Supp. at 920. If the Court were to end the inquiry here, it would be required to dismiss the plaintiff's federal claims. However, the defendant's argument for dismissal overlooks a recent and important Second Circuit decision on this issue.

In *Morelli v. Cedel,* 141 F.3d 39 (2d Cir.1998), which was decided after *Robinson,* the Second Circuit held that the language of 29 U.S.C. § 623(h)(2) does not exempt the United States branch of a foreign employer from the ADEA. *See Morelli,* 141 F.3d at 43–44. The Court analyzed the plain language of the statute, the context in which it was amended, and its legislative history; compared the statute with corresponding foreign-employer exclusions in Title VII, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101–12213, which are expressly limited to the "foreign operations of an employer that is a foreign person not controlled by an American employer," 42 U.S.C. §§ 2000e–1(c)(2), 12112(c)(2)(B); described the policy considerations underpinning the statute; and concluded that the ADEA "generally applies 'to foreign firms operating on U.S. soil.'" *Morelli,* 141 F.3d at 43, 44 (quoting EEOC Policy Guidance, N–915.039, Empl.Prac.Guide (CCH) 5183, 6531 (March 3, 1989)).

■ Here, the Tourist Board is an "employer that is a foreign person not controlled by an American employer." 42 U.S.C. §§ 2000e–1(c)(2), 12112(c)(2)(B). However, the Tourist Board conducts foreign operations in its New York City office. Thus, under the rule in *Morelli,* the defendant is subject to the ADEA. *See Morelli,* 141 F.3d at 43–44. In addition, as noted in *Morelli,* the Title VII foreign employer exclusion provision is limited to the "'foreign operations of an employer that is a foreign person not controlled by an American employer.'" *Morelli,* 141 F.3d at 43 (quoting 42 U.S.C. § 2000e–1(c)(2)). Therefore, pursuant to Title VII itself as well as the analysis of it in *Morelli,* the Tourist Board is not exempt from the requirements of Title VII either.

■ As such, the Court finds that the Tourist Board is subject to the provisions of the ADEA and Title VII and may be hailed into Court for alleged violations of these statutes. The Court rejects the argument by the Tourist Board that it cannot be sued by Hansen because she is not a United States citizen. It is well settled that permanent residents of the United States, such as Hansen, are accorded the protection of this country's laws and the benefit of access to its courts.

**B. As to the Defendant's Claim that it is Immune from Suit Under the Foreign Sovereign Immunities Act**

■ The Tourist Board claims that it is immune from suit under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602, *et. seq.,* and, therefore, the complaint must be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. In considering a motion to dismiss for lack of subject matter jurisdiction, a court must accept all material facts well-pleaded in the complaint as true and must draw all reasonable inferences in the light most favorable to the plaintiff. *See Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.,* 968 F.2d 196, 198 (2d Cir.1992). However, the Court's analysis is not confined to the complaint. "On a motion under [Rule] 12(b)(1) challenging the district court's subject matter jurisdiction the court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits." *Antares Aircraft v. Federal Republic of Nigeria,* 948 F.2d 90, 96 (2d Cir.1991), *vacated on other grounds,* 505 U.S. 1215, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992). Thus, the Court may look to matters outside the pleadings, such as affidavits, documents, and deposition testimony. *See Alonso v. Saudi Arabian Airlines Corp.,* 1999 WL 244102 *1 (S.D.N.Y.1999).

Foreign states are immune from the jurisdiction of the courts of the United States

and the individual states pursuant to the FSIA. *See* 28 U.S.C. § 1604; *Argentine Republic v. Amerada Hess Shipping Corp.* 488 U.S. 428, 434, 109 S.Ct. 683, 688, 102 L.Ed.2d 818 (1989); *NYSA–ILA Pension Trust Fund v. Garuda Indonesia,* 7 F.3d 35, 38 (2d Cir.1993). The term, "foreign states" includes an agency or instrumentality of a foreign state. *See* 28 U.S.C. § 1603(a). Denmark is a foreign state, and the parties do not dispute that the Tourist Board is an "agency or instrumentality" of Denmark as defined in 28 U.S.C. § 1603(a) and (b).

Thus, the Tourist Board is immune from suit, and this Court lacks subject matter jurisdiction, unless one of several statutorily defined exceptions applies. *See* 28 U.S.C. § 1605 (providing seven general exceptions to the jurisdictional immunity of a foreign state); *Republic of Argentina v. Weltover, Inc.,* 504 U.S. 607, 610–11, 112 S.Ct. 2160, 2164, 119 L.Ed.2d 394 (1992). In particular, Hansen argues that subject matter jurisdiction is conferred by the FSIA's "commercial activity" exception to sovereign immunity. *See* 28 U.S.C. § 1605(a)(2).

"The first clause of § 1605(a)(2) of the Act provides that a foreign state shall not be immune from the jurisdiction of United States courts in any case 'in which the action is based upon a commercial activity carried on in the United States by the foreign state.' " *Saudi Arabia v. Nelson,* 507 U.S. 349, 365, 113 S.Ct. 1471, 1477, 123 L.Ed.2d 47 (1993) (quoting 28 U.S.C. § 1605(a)(2)). The FSIA further states that commercial activity may be "either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d). Moreover, "[t]he commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." *Id.*

■ The Supreme Court's decision in *Nelson,* 507 U.S. at 356, 113 S.Ct. at 1477, suggests that the first step in analyzing whether an activity is commercial is to identify the particular conduct upon which the plaintiff's action is "based" for the purposes of the Act. *See id.* at 356–57, 113 S.Ct. at 1477 (citing *Texas Trading & Milling Corp. v. Federal Republic of Nigeria,* 647 F.2d 300, 308 (2d Cir.1981)). The Court held that the phrase, "based upon," as it is used in the FSIA, "is read most naturally to mean those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case." *Id.* at 357, 113 S.Ct. at 1477.

In this case, the activity that forms the plaintiff's age and sex discrimination claims pertains to the conditions of her employment in the New York office of the Tourist Board. In particular, Hansen alleges that after she rejected the sexual advances of her supervisor, Boye–Moller, her salary increases were not as large as those of similarly situated employees, her workload was increased, and her responsibilities were changed. Hansen also claims that Boye–Moller passed over her for a promotion and instead chose a younger, less qualified and less experienced person for the position. The plaintiff further asserts that she told Boye–Moller that she believed his promotion decision was unlawful. According to the plaintiff, from that moment forward, Dorthe Hansen, the plaintiff's new supervisor, forced her to travel extensively, falsely accused her of refusing to perform work, and ridiculed her for wishing to spend time with her ailing husband. The plaintiff contends that this conduct constituted harassment in retaliation for her confronting Boye–Moller about his allegedly unlawful conduct, was directed at her because of her age and gender, and continued until she was fired.

Having identified the activity upon which the plaintiff's action is based, the Court now considers whether such activity is "commercial" within the meaning of the FSIA. *See Nelson,* 507 U .S. at 358–59, 113 S.Ct. at 1478. Although the FSIA provides that the commercial character of an Act is to be determined by reference to its "nature" rather than its "purpose," 28 U.S.C. § 1603(d), "[t]his definition ... leaves the critical term 'commercial' largely undefined." *Weltover,* 504 U.S. at 612, 112 S.Ct. at 2165. Fortunately, the Supreme Court has performed the task of interpreting the term. *See Nelson,* 507 U.S. at 359–60, 113 S.Ct. at 1478–79, *Weltover,* 504 U.S. at 614, 112 S.Ct. at 2165.

In *Nelson* and *Weltover,* the Court found that at the time Congress enacted the FSIA, the government had endorsed a "restrictive" theory of foreign sovereign immunity. *Weltover,* 504 U.S. at 613, 112 S.Ct. at 2165; *see Nelson,* 507 U.S. at 359, 113 S.Ct. at 1478. The Court held that, therefore, "the meaning of 'commercial' for purposes of the act must be the meaning Congress understood the restrictive theory to require at the time it passed the statute." *Nelson,* 507 U.S. at 359, 113 S.Ct. at 1478–79 (citing *Weltover,* 504 U.S. at 612–13, 112 S.Ct. at 2165–66).

Under the restrictive theory of sovereign immunity, a foreign state is immune from the jurisdiction of the United States courts "as to its sovereign or public acts ... but not as to those that are private or commercial in nature." *Nelson,* 507 U.S. at 359–60, 113 S.Ct. at 1479. Put differently, "[a] foreign state engaging in 'commercial' activities 'do[es] not exercise powers peculiar to sovereigns'; rather, it 'exercise[s] only those powers that can also be exercised by private citizens.'" *Weltover,* 504 U.S. at 614, 112 S.Ct. at 2165 (quoting *Alfred Dunhill of London, Inc. v. Republic of Cuba,* 425 U.S. 682, 704, 96 S.Ct. 1854, 1866, 48 L.Ed.2d 301 (1976)); *see Nelson,* 507 U.S. at 360, 113 S.Ct. at 1479; *Drexel Burnham Lambert Group, Inc. v. Committee of Receivers for A.W. Galadari,* 12 F.3d 317, 328 (2d Cir.1993). Similarly, "when a foreign government acts, not as regulator of a market, but in the manner of a private player within it, the foreign sovereign's actions are 'commercial' within the meaning of the FSIA." *Weltover,* 504 U.S. at 614, 112 S.Ct. at 2166. Furthermore, whether a state acts "in the manner of" a private party is a question of behavior, not motivation." *Nelson,* 507 U.S. at 360, 113 S.Ct. at 1479. As described in *Weltover:*

> [T]he question is not whether the foreign government is acting with a profit motive or instead with the aim of fulfilling uniquely sovereign objectives. Rather, the issue is whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in "trade and traffic or commerce."

*Weltover,* 504 U.S. at 614, 112 S.Ct. at 2166 (citations omitted) (emphasis in original).

The Supreme Court applied these principles to the conduct alleged in *Weltover* and concluded that Argentina's refinancing of bonds qualified as commercial activity, because even though Argentina's purpose was to stabilize its currency, the foreign state had dealt in the bond market as would a private player. *See Weltover,* 504 U.S. at 615–17, 112 S.Ct. at 2166–67. One year later, in *Nelson,* the Court applied the same principles to a different set of facts and held that the "Saudi Government's [allegedly] wrongful arrest, imprisonment, and torture of Nelson [ ] could not qualify as commercial under the restrictive theory [because] ... a foreign state's exercise of the power of its police has long been understood for purposes of the restrictive theory as peculiarly sovereign in nature." *Nelson,* 507 U.S. at 361, 113

S.Ct. at 1479; *see also WMW Machinery, Inc. v. Werkzeugmaschinenhandel GmbH IM Aufbau,* 960 F.Supp. 734, 739 (S.D.N.Y.1997) (finding that requiring manufacturers to export and sell goods through distributors other than the plaintiff; transferring ownership of factories to the plaintiff's competitors; and inducing the plaintiff to increase its purchases from factories when those factories would soon close was conduct that constituted "commercial activity").

 ■ Applying the principles and holdings of *Weltover* and *Nelson* to the case at hand, the Court finds that the actions that form the basis of Hansen's complaint do not reflect the exercise of "powers peculiar to sovereigns." *Nelson,* 507 U.S. at 360, 113 S.Ct. at 1479. Rather, the Tourist Board's activities, as alleged by the plaintiff, are basic employment decisions akin to those made by many small businesses. As such, they reflect an exercise of "powers that can also be exercised by private citizens," *Weltover,* 504 U.S. at 614, 112 S.Ct. at 2165, and qualify as "commercial activity" as that term is used in the FSIA. *See Nelson,* 507 U.S. at 360–61, 113 S.Ct. at 1479.

Accordingly, the Court finds that the commercial activity exception to the FSIA applies to the conduct of the Tourist Board. *See* 28 U.S.C. § 1605(a)(2). Thus, the Tourist Board cannot avail itself of the immunity protections of the FSIA and is subject to suit under the ADEA and Title VII.

**C. As to the Defendant's Claim That the Sex Discrimination and Title VII Retaliation Causes of Action Should Be Dismissed on the Ground That They Were Not Asserted in the Plaintiff's EEOC Charge**

The Tourist Board contends that the Court lacks subject matter jurisdiction over Hansen's sex discrimination and Title VII retaliation causes of action on the ground that the plaintiff failed to exhaust these claims. In particular, the Tourist Board argues that the form of the sex discrimination Hansen claims in her complaint differs markedly from, and is not reasonably related to, that which is described in her EEOC charge. In addition, the Tourist Board alleges that Hansen did not include a claim of retaliation in her EEOC charge and did not even check the box next to the word "Retaliation," which appeared under the heading "Basis of Discrimination." The Tourist Board further asserts that the retaliatory conduct alleged in the complaint is not reasonably related to the conduct described in the EEOC charge.

 ■ In Title VII cases, a district court only has jurisdiction over those claims included in the EEOC charge or those that are "reasonably related" to the allegations in the plaintiff's EEOC charge. *See Butts v. City of New York Dep't of Hous. Preservation & Dev.,* 990 F.2d 1397, 1401 (2d Cir.1993). Conduct alleged in a complaint is reasonably related to conduct described in an EEOC charge when it: (1) is within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination; (2) would constitute retaliation for filing a timely EEOC charge; and (3) constitutes further incidents of discrimination perpetrated in precisely the same manner as alleged in the EEOC charge. *See Butts,* 990 F.2d at 1402–03. The purpose of the exhaustion requirement is to provide notice to the employer and to encourage conciliation and voluntary compliance. *See Butts,* 990 F.2d at 1401; *Snell v. Suffolk County,* 782 F.2d 1094, 1101 (2d Cir.1986).

The first exception to the exhaustion requirement is that which is applicable to

the present case. This "loose pleading" exception is based on the recognition that EEOC charges are often filed by complainants without the aid of an attorney and with the primary purpose of alerting the EEOC to the discrimination claimed by the complainant. *See Butts,* 990 F.2d at 1402. Under the standard enunciated above, the relevant inquiry is whether the EEOC could reasonably have been expected to investigate Hansen's claims of sex discrimination and retaliation, based on the allegations she set forth in her EEOC charge. *See Butts,* 990 F.2d at 1402.

Hansen filed her EEOC charge on July 2, 1999. She checked off boxes next to "Title VII of the Civil Rights Act of 1964" and "The Age Discrimination in Employment Act." Under the heading, "Basis of Discrimination," Hansen placed an "X" in the boxes next to "Sex," and "Age," respectively. She also wrote that the earliest date of the alleged violation was June 1, 1998, and the most recent date was September 14, 1998. She further indicated, by checking a box, that the violation was a continuing one.

In regard to the factual allegations contained in the EEOC charge, Hansen claimed that in June 1997, Boye–Moller promoted Dorthe Hansen to a position for which Hansen was a candidate, even though Dorthe Hansen was younger, less qualified, and had less experience and education than did Hansen. Hansen further asserted that Boye–Moller "has a history of promoting younger women and excluding older women from supervisory positions."

The plaintiff further alleged that after June 1998, Dorthe Hansen began a campaign of harassment designed to force the plaintiff's resignation. In her EEOC charge, the plaintiff further claimed that in response to Dorthe Hansen's request for suggestions on how to improve the office, Hansen recommended that the burden of traveling should be shared by more of the employees, because she would like to have more time to spend with her ailing husband. Hansen also alleged that approximately one month after she made this suggestion, she was summoned to a meeting with Dorthe Hansen and Lars Blicher–Hansen, another supervisor who told her, "I hear you do not want to perform the functions of your position." He also advised Hansen that she might not have a position with the Tourist Board for much longer.

Hansen further alleged that two months later, on September 14, 1998, she was fired, and her position was filled by a woman in her thirties. She claimed that "the Danish Tourist Board has discriminated against older female employees and shown a preference to male employees and younger female employees prior and subsequent to my discharge."

█ Turning to the allegations of sex discrimination that appear in the complaint, Hansen claims that after she declined sexual advances made by Boye–Moller on a business trip to Chicago in 1995, she did not receive the same wage increases as similarly situated employees did, her workload was increased, and her responsibilities were changed. Although the vague allegations in the complaint submitted do not specify the theory of Title VII discrimination upon which the plaintiff bases her claims, the Court interprets her complaint to allege quid pro quo sexual harassment. *See generally Karibian v. Columbia Univ.,* 14 F.3d 773, 777 (2d Cir.1994) ("[Q]uid pro quo harassment occurs when 'submission to or rejection of [unwelcome sexual] conduct by an individual is used as the basis for employment decisions affecting such individual'" (quoting 29 C.F.R. § 1604.11(a)(2))). In the Court's view, Hansen's quid pro quo sex discrimination claim is not reasonably related to the allegations in the EEOC charge. First, al-

though Hansen checked off the box next to "Sex" discrimination, at no point in the EEOC charge did she describe a sexual advance made by Boye–Moller. Indeed, her summary of Boye–Moller's conduct is limited to the 1997 promotion decision and his alleged "history of promoting younger women and excluding older women from supervisory positions." Next, the alleged sexual advance occurred in 1995, but Hansen informed the EEOC that the discriminatory conduct began in June of 1997. Thus, based on the conduct described in the EEOC charge and the alleged time frame of that conduct, the Court finds that the EEOC could not reasonably be expected to investigate an alleged sexual advance by Boye–Moller in 1995.

Nor could the EEOC reasonably be expected to investigate Hansen's present allegations regarding the work-related consequences of rejecting Boye–Moller. In her EEOC charge, Hansen alleged that the "campaign of discrimination" was initiated by Dorthe Hansen in or about June 1998, not by Boye–Moller in 1995. Moreover, according to the EEOC charge, Hansen "always had excellent performance appraisals and attendance and received annual raises," until Dorthe Hansen began maneuvering to force Hansen's resignation. There is simply no indication in the EEOC charge that Hansen was affected by negative employment decisions, much less that those decisions were based on her rejection of Boye–Moller's sexual advances. *See generally Karibian,* 14 F.3d at 777. Thus, the Court finds that the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination," *Butts,* 990 F.2d at 1402, did not include an investigation of alleged sex discrimination beginning in 1995 and continuing to 1998. As such, the Court concludes that Hansen's sex discrimination claim is not reasonably related to the allegations presented to the EEOC. Therefore, the first

cause of action, which alleges a violation of Title VII based on the plaintiff's gender, is dismissed for failure to exhaust administrative remedies.

■ Similarly, the Court finds that Hansen's Title VII retaliation claim is not within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. Title VII prohibits employers from discriminating against employees who have opposed activity made unlawful by Title VII. *See* 42 U.S .C. §§ 2000e–3(a), 2000e–2(a)(1). However, Hansen not only failed to describe, in her EEOC charge, any activity made unlawful by Title VII; she also neglected to mention how she opposed such activity. Indeed, Hansen's Title VII retaliation claim presents a new legal theory and an entirely new set of factual allegations. The Court finds it difficult to envision how the EEOC would know to investigate a Title VII retaliation claim when the EEOC charge does not describe discriminatory conduct prohibited by Title VII and does not explain how the plaintiff opposed that discrimination. "The 'reasonable relatedness' test is not satisfied by the improbable possibility that the EEOC could have stumbled into a new universe of allegations that the plaintiff alleges for the first time in [her] complaint." *Chinn v. City Univ. of New York School of Law at Queens College,* 963 F.Supp. 218, 223 (E.D.N.Y.1997). Accordingly, the plaintiff's Title VII retaliation claim is dismissed for failure to exhaust administrative remedies.

**D. As to the Defendant's Claim That the ADEA Retaliation Cause of Action Should Be Dismissed on the Ground That It Was Not Asserted in the Plaintiff's EEOC Charge**

■ The Tourist Board also moves for dismissal of Hansen's claim of retalia-

tion in violation of the ADEA on the ground that she failed to exhaust that claim as well. Similar to the jurisdictional requirements of Title VII claims, a district court has subject matter jurisdiction over ADEA claims only if the plaintiff first alleged those claims in an EEOC charge. *See* 29 U.S.C. § 626(d); *Malarkey v. Texaco, Inc.*, 983 F.2d 1204, 1208 (2d Cir.1993). However, "[a] plaintiff may bypass this agency exhaustion requirement, and bring her complaints for the first time in court, only by demonstrating that new discrimination claims are 'reasonably related' to charges that were previously filed with the EEOC." *Malarkey*, 983 F.2d at 1208.

In her complaint, Hansen alleges that she told Boye–Moller she thought his June 1997 decision to promote Dorthe Hansen instead of her "was made for other than lawful business reasons." The plaintiff further claims that Boye–Moller related this complaint to Dorthe Hansen who thereafter began a campaign of harassment designed to force the plaintiff's resignation.

■ As described above, the plaintiff's EEOC charge describes Boye–Moller's 1997 decision to promote Dorthe Hansen instead of the plaintiff and, read liberally, alleges that Boye–Moller passed over the plaintiff because of her age. Further, the EEOC charge contains the allegation that "Dorthe–Hansen began a campaign designed to have me resign from the Danish Tourist Board." However, the EEOC charge does not contain the allegation that Hansen voiced opposition to the promotion decision and does not suggest that Hansen was asserting that Dorthe Hansen's adverse employment actions were causally connected to Hansen's purported opposition to the unlawful employment activity. Thus, the question for the Court is whether it is reasonable to expect that the retaliatory conduct complained of would have fallen within the scope of an investigation prompted by the EEOC charge of age discrimination. The Court finds that it is.

Both the EEOC charge and the complaint describe Boye–Moller's June 1997 decision to promote Dorthe Hansen instead of the plaintiff and allege that the decision was based on the plaintiff's age. In addition, both documents allege that starting in June 1998 and continuing until September 14, 1998, Dorthe Hansen attempted to force the plaintiff to resign. In regard to the ADEA retaliation claim, the main difference between the EEOC charge and the complaint is that the former does not contain a description of the protected conduct, namely, the plaintiff's statement to Boye–Moller that she thought his promotion decision "was made for other than lawful business reasons." However, given that the plaintiff described not only the promotion decision but also the alleged subsequent retaliatory conduct in her EEOC charge, the Court finds that the plaintiff's claim of retaliation in violation of the ADEA would fall within "the scope of the EEOC investigation which can reasonable expected" to have grown out of the plaintiff's EEOC charge. *Butts*, 990 F.2d at 1402. Thus, the Court concludes that the plaintiff's ADEA retaliation claim is reasonably related to the allegations presented in her EEOC charge. Accordingly, the Tourist Board's motion to dismiss the ADEA retaliation claim for failure to exhaust administrative remedies is denied.

### E. As to the Defendant's Claim That the ADEA and ADEA Retaliation Causes of Action Should Be Dismissed As Time Barred

■ A plaintiff's failure to file a timely EEOC charge generally bars that plaintiff from raising a discrimination claim in federal court. *See Butts*, 990 F.2d at 1401. "In states such as New York that have an

agency with the authority to address charges of discriminatory employment practices, the statute of limitations for filing a charge of discrimination with the EEOC is 300 days." *Id.* (citing 42 U.S.C. § 2000e–5(e)). Here, the plaintiff filed her EEOC charge on July 2, 1999. Therefore, any claims of discrimination that occurred prior to September 5, 1998—the date that is 300 days before July 2, 1999—are untimely. The plaintiff's claims of failure to promote, retaliation, disproportionate wage increases, extensive travel, and altered responsibilities, all occurred prior to September 5, 1998. Accordingly, these claims are, on their face, barred by the statute of limitations.

 However, the Second Circuit has recognized a continuing-violation exception to the statute of limitations in ADEA and Title VII cases. *See Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 907 (2d Cir. 1997). The continuing violations exception "extends the limitations period for all claims of discriminatory acts committed under an ongoing policy of discrimination even if those acts, standing alone, would have been barred by the statute of limitations." *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 765 (2d Cir.1998); *see Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir.1993).

 The continuing violation is recognized in the Second Circuit under limited circumstances. *See Cornwell v. Robinson,* 23 F.3d 694, 703 (2d Cir.1994); *Nicholas v. Nynex, Inc.,* 974 F.Supp. 261, 265 (S.D.N.Y.1997) (noting that the exception is disfavored in this Circuit). "To establish a continuing violation, a plaintiff may demonstrate that the defendant had adopted a discriminatory policy or practice, such as the use of discriminatory lists or employment test, prior to and during the limitations period." *Nicholas,* 974 F.Supp. at 265 (citing *Lambert,* 10 F.3d at

53). These type of discriminatory policies or mechanisms include "the repeated use of discriminatory seniority lists or employment tests." *Lightfoot,* 110 F.3d at 907. Alternatively, a plaintiff may establish a continuing violation by identifying specific and related incidents of discrimination that an employer permits to continue unremedied for a period of time. *See id.; Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 713 (2d Cir.1996). " '[T]o qualify as a series of related acts, the events ... must not be isolated and sporadic outbreaks of discrimination, but a dogged pattern.' " *Nicholas,* 974 F.Supp. at 267 (quoting *Sunshine v. Long Island Univ.,* 862 F.Supp. 26, 29 (E.D.N.Y.1994)).

Here, the plaintiff's allegations are numerous and include failure to promote, retaliation, failure to pay the wages received by similarly situated employees, and imposing greater responsibilities on the plaintiff than on similarly paid employees. In addition, Hansen alleged in her complaint and in her EEOC charge not only that Boye–Moller refused to promote her because of her age, but also that "Defendant has a history of promoting younger women and excluding older women from supervisory positions." This latter contention constitutes an allegation of a continuing violation of age discrimination. Further, in her EEOC charge, the plaintiff characterizes her action as a "continuing" one and indicated that the discriminatory activities occurred over a period of time beginning in June 1997 and ending on September 14, 1998.

 In addition, Hansen alleged that she complained to Boye–Moller about the failure to promote, and that Boye–Moller related her complaint to Dorthe Hansen. The complaint further alleges that, nevertheless, "Dorthe Hansen began a campaign of harassment designed to force Plaintiff's resignation." That the plaintiff character-

ized Dorthe Hansen's negative employment decisions as a "campaign" in both her EEOC charge and the complaint further demonstrates that the allegations of discriminatory conduct are not isolated or sporadic. Rather, reading the complaint in the light most favorable to the plaintiff, the Court finds that the plaintiff has sufficiently alleged "a dogged pattern" of discrimination that continued unremedied over a period of years. *See Lightfoot,* 110 F.3d at 907; *Nicholas,* 974 F.Supp. at 267.

Although the Court concludes that the plaintiff's allegations establish a continuing violation so that her ADEA and ADEA retaliation claims are timely, it also notes the distinction between the standard to be applied at this, the dismissal, stage of an action as opposed to the summary judgment stage of a case, after discovery has been completed. *See Lightfoot,* 110 F.3d at 907. At this stage of the proceedings, the plaintiff need only allege the existence of a policy of discrimination to avoid dismissal of the complaint. *See id.; Alexander v. The Turner Corp.,* 2001 WL 11062 *3 (S.D.N.Y. Jan.4, 2001). Such a "mere allegation," however, may not survive a motion for summary judgment. *See id.* ("Although the mere allegation of the existence of such a policy would be sufficient to withstand a challenge for failure to state a claim, something more is required to avoid summary judgment on the issue."); *Pustilnik v. Hynes,* 2000 WL 914629 * 5 (E.D.N.Y. June 27, 2000) (cautioning that the Second Circuit does not look favorably on the continuing violation doctrine and the result may be different at the summary judgment stage).

### F. As to the Plaintiff's State Law Causes of Action

The defendant moves to dismiss the plaintiff's state law causes of action on the grounds that: (a) they are time-barred; and (b) should the Court dismiss the federal causes of action, it should decline to retain jurisdiction over the state causes of action.

The statute of limitations for actions premised on New York's Human Rights law is three years from the date on which the cause of action accrued. *See VanZant,* 80 F.3d at 714 (citing CPLR § 214(2)). Hansen initiated this action on March 13, 2000. Therefore, only those claims that accrued after March 13, 1997 may be pursued. Hansen's state-law sex discrimination causes of action stem from conduct that allegedly occurred in 1995. Therefore, those claims are dismissed as time-barred.

The Court notes that the continuing-violation exception to the statute of limitations can apply to claims brought pursuant to the NYHRL, as it does to claims brought under the ADEA and Title VII. *See Nicholas,* 974 F.Supp. at 269. Although the plaintiff raises this argument in her opposition papers, she did so in such a conclusory fashion that the Court cannot determine which claims she argues are within in the three year period, which claims are time-barred, and why those time barred claims should be considered part of a continuing violation.

Despite this obvious omission, the Court would have applied the continuing-violation analysis that appears above. However, that analysis pertains only to the ADEA and ADEA retaliation claims, which are not time-barred under the NYHRL statute of limitations, and has nothing to do with to the sex discrimination claims, which are time-barred. Moreover, the plaintiff fails to demonstrate why the continuing-violation analysis of age discrimination claims that span a 15–month period should apply to claims of sex discrimination that allegedly occurred two years earlier. Indeed, these claims are based on totally different

sets of facts which allegedly transpired years apart. Accordingly, the Court declines to apply the continuing-violation analysis which exempts certain of the plaintiff's federal age discrimination claims from the statute of limitations bar to the plaintiff's sex discrimination claims. Thus, the plaintiff's sex discrimination claims brought pursuant to state law are dismissed as untimely.

 In regard to the Court's supplemental jurisdiction, 28 U.S.C. § 1367(a) gives the Court "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." State and federal claims form "one case or controversy" when they "derive from a common nucleus of operative facts or when both claims would normally be expected to be tried in a single judicial proceeding." *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Here, the plaintiff's state law causes of action arise out of the identical set of factual allegations that form the basis of her federal causes of action. As such, the Court will retain jurisdiction over the remaining state law claims in the interests of judicial economy. *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

### G. As to the Plaintiff's Demand For a Jury Trial

The Tourist Board also moves to strike the plaintiff's request for a jury trial on the ground that the Tourist Board is an "agency or instrumentality of a foreign state" under the FSIA and, thus, is entitled to a non-jury trial. *See* 28 U.S.C. § 1063. Rather than opposing the Tourist Board's motion, Hansen withdrew her request for a jury trial. Accordingly, the Court grants the defendant's motion to strike the plaintiff's request for a jury trial.

### III. *CONCLUSION*

Having reviewed the submissions of the parties, it is hereby

**ORDERED,** that the defendant's motion to dismiss the first and second causes of action is **GRANTED,** and those claims are dismissed; and it is further

**ORDERED,** that the defendant's motion to dismiss the third and fourth causes of action is **DENIED;** and it is further

**ORDERED,** that the defendant's motion to dismiss the fifth, sixth, seventh, and eighth causes of action is **GRANTED** to the extent that those causes of action raise claims of sex discrimination but is **DENIED** to the extent that those causes of action raise claims of age discrimination; and it is further

**ORDERED,** that the plaintiff's request for a jury trial is struck, and this case shall be designated for a non-jury trial; and it is further

**ORDERED,** that the parties are directed to proceed forthwith to United States Magistrate Judge William D. Wall to set a schedule for discovery.

**SO ORDERED.**