Louise M. SOARES

v.

## UNIVERSITY OF NEW HAVEN.

### No. 3:00CV2356 (JBA).

United States District Court,
D. Connecticut.

Nov. 29, 2001.

John R. Williams, Williams & Pattis, New Haven, CT, for Plaintiff.

Glenn Powell, Mayo, Gilligan & Zito, Wethersfield, CT, for Defendant.

## MEMORANDUM OF DECISION
### [Doc. # 45][1]

ARTERTON, District Judge.

This is the second lawsuit brought by plaintiff Louise Soares, former Director of the University of New Haven ("UNH") Education Department, following her removal from that position and initiation of a sex, age and disability discrimination complaint with the Connecticut Commission of Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunities Commission ("EEOC"). Plaintiff now claims that she was retaliated against by UNH for the filing of the CHRO complaint and her previous federal lawsuit.

---

1. Defendant's motion for summary judgment [Doc. # 45] was filed in the related case, 3:99cv1107 (JBA), which was unconsolidated on August 17, 2001.

Defendant UNH has moved for summary judgment, arguing that plaintiff's claims are procedurally barred by her alleged failure to exhaust administrative remedies, and by the Court's order in the first lawsuit denying plaintiff's motion to amend her complaint to assert a claim of retaliation. For the reasons discussed below, defendant's motion for summary judgment is DENIED.

## I. Background

Because defendant's motion is based solely on procedural aspects of this case—the relationship between Dr. Soares' charges before the CHRO and EEOC and her current allegations of retaliation, and the effect of the Court's ruling denying plaintiff's motion to amend her complaint in the first lawsuit—the relevant facts can be briefly set forth.

Dr. Soares was hired by UNH in August 1992 as a Professor of Education and Director of the Education Department. On August 3, 1998, Dr. Soares was informed by the Dean of the UNH College of Arts and Sciences that she was terminated from the Director position. At the same meeting, Dr. Soares informed the Dean that she was suffering from a serious illness. Dr. Soares then took a medical leave of absence on August 14, 1998, and returned to work as a faculty member on October 29, 1998.

At some time between her termination and August 21, 1998, Dr. Soares retained counsel, and on September 11, 1998, she filed a discrimination complaint with the CHRO, in which she alleged that she had been discriminated against based on her age, sex and disability in connection with her removal from the Director position, and that her annual salary had been reduced by approximately $10,000. The CHRO complaint cover sheet does not indicate that plaintiff alleged that she was retaliated against for complaining of discrimination.[2] Dr. Soares also filed a charge of discrimination with the EEOC alleging the same facts as her CHRO complaint, and similarly not indicating that retaliation was a basis for her claim of discrimination.

Following plaintiff's return to work in October 1998, she was allegedly assigned an inferior classroom in a different building than the rest of the education staff, was required to teach two classes off-campus, was refused the keys to her department headquarters, was not given notice of departmental meetings and was denied a mailbox in her department. In addition, plaintiff claims that she was subjected to more stringent reviews and investigations, and that she was refused teaching assignments that she desired. Plaintiff asserts that these actions were taken in retaliation for her retention of counsel and filing of the CHRO complaint in September 1998. The alleged retaliatory acts began in October 1998 and are claimed to continue through the summer of 2001.

Although plaintiff's CHRO and EEOC complaints were pending when these acts of retaliation began, plaintiff did not amend her complaints to include allegations describing this retaliation at any point.

---

**2.** Although plaintiff's Local Rule 9(c)(2) Statement states that plaintiff checked the box for "retaliation/constructive discharge" on the CHRO complaint, *see* Local Rule 9(c)(2) Statement at ¶¶ 42, 68, there is no box for "retaliation/constructive discharge" on the CHRO complaint form. Instead, there is one box for "constructively discharged," which is checked, and a separate box, indented on the next line, for "retaliated," which is not checked. The Court therefore concludes that there is no dispute of fact as to whether plaintiff's original CHRO complaint contains any allegation or reference to retaliation.

On June 14, 1999, plaintiff filed her first lawsuit, civil action number 3:99cv1107 (JBA), alleging sex, age and disability discrimination relating to her termination from the Director position. The original complaint filed in that action did not mention any claim of retaliation. The Order on Pre–Trial Deadlines issued in that case set August 14, 1999 as the deadline for filing amended pleadings. Following a series of extensions, discovery was to close on October 31, 2000. Plaintiff moved to amend her complaint in that action to assert a claim of retaliation on September 29, 2000. Defendant opposed the motion to amend on the grounds that it was untimely, prejudicial, would delay the litigation, and, significantly, that plaintiff could file a separate lawsuit related to the retaliation claims, and the motion to amend was denied by Magistrate Judge Margolis "for the reasons set forth in defendant's brief" on November 22, 2000. Plaintiff then filed this lawsuit on December 11, 2000, alleging that defendant had retaliated against her for retaining counsel and filing the CHRO complaint in September 1998.

## II. Standard

Summary judgment will be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the non-moving party. *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Ametex Fabrics, Inc. v. Just In Materials, Inc.,* 140 F.3d 101, 107 (2d Cir.1998). A genuine issue of fact is one that, if resolved in favor of the non-moving party, would permit a jury to return a verdict for that party. *R.B. Ventures, Ltd. v. Shane,* 112 F.3d 54, 57 (2d Cir.1997) (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

After the moving party meets this burden, the burden shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *accord Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525–26 (2d Cir.1994). The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Instead, that party must "come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely . . . on the basis of conjecture or surmise." *Trans Sport v. Starter Sportswear,* 964 F.2d 186, 188 (2d Cir. 1992) (citation and internal quotations omitted); *see also Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986).

## III. Discussion

■ A Title VII claimant may bring suit in federal court only if she has filed a timely complaint with the EEOC and obtained a right-to-sue letter. *See* 42 U.S.C. § 2000e-5(e) and (f); *Belgrave v. Pena,* 254 F.3d 384, 386 (2d Cir.2001); *Shah v. New York State Dep't of Civil Serv.,* 168 F.3d 610, 613 (2d Cir.1999). The purpose of this exhaustion requirement is to provide notice to the employer and to encourage conciliation and voluntary compliance. *See Butts v. City of New York Dep't of Hous. Preservation & Dev.,* 990 F.2d 1397,

1401 (2d Cir.1993); *Snell v. Suffolk Cty.,* 782 F.2d 1094, 1101 (2d Cir.1986).

 However, "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably related to those that were filed with the agency.' " *Shah,* 168 F.3d at 614. Conduct alleged in a complaint is "reasonably related" to conduct described in an EEOC charge when it: (1) is within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination; (2) would constitute retaliation for filing a timely EEOC charge; or (3) constitutes further incidents of discrimination perpetrated in precisely the same manner as alleged in the EEOC charge. *Butts,* 990 F.2d at 1402–03.

 The first and third exceptions rely on the premise that the EEOC is likely to discover the conduct in its investigation or the agency would have "had the opportunity to investigate, if not the particular discriminatory incident, the method of discrimination manifested in prior charged incidents." *Id.* at 1403. The retaliation exception, in contrast, does not rest on the theory that the investigating agency is likely to discover the alleged misconduct during its investigation of plaintiff's allegations, and indeed, "it is equally possible that the retaliation would come after the EEOC investigation was completed." *Id.* at 1402. Instead, the exhaustion requirement is relaxed where retaliation is alleged because of

> the close connection of the retaliatory act to both the initial discriminatory conduct and the filing of the charge itself. The EEOC already will have had the opportunity to investigate and mediate

the claims arising from the underlying discriminatory acts alleged. Due to the very nature of retaliation, the principal benefits of EEOC involvement, mediation of claims and conciliation, are much less likely to result from a second investigation.

*Id.* (citations omitted).

 UNH argues that plaintiff's claim of retaliation is outside the scope of her original CHRO/EEOC complaint, which related to her termination from the director position, and is different in kind because the retaliation claim relates to the conditions of her work environment.[3] According to UNH, such claims are not "reasonably related" to the original claim. *Hansen v. Danish Tourist Bd.,* 147 F.Supp.2d 142, 151–53 (E.D.N.Y.2001), relied on by defendant, held that a plaintiff's claim of retaliation for sex discrimination, raised for the first time in her federal lawsuit, was not exhausted because the EEOC could not reasonably have been expected to investigate the claim of retaliation based on the allegations set forth in her EEOC charge. However, the plaintiff did not describe any sex discrimination in her EEOC charge, which was limited to allegations of failure to promote based on age discrimination, and the court therefore concluded that her claim of retaliation for complaints of sex discrimination could not be "reasonably related" to the EEOC charge. *Id.* at 153. Moreover, *Hansen* addressed only the first exhaustion exception, and this Court concludes that the second exhaustion exception, related specifically to claims of retaliation for the filing of an EEOC charge, is the more

---

**3.** Defendant does not argue that the fact that plaintiff's retaliation claim is raised in a new lawsuit requires an additional CHRO and EEOC filing; instead, defendant asserts that even if plaintiff had pleaded a claim of retaliation in her original lawsuit, it would be barred by her failure to exhaust administrative remedies.

appropriate one under the facts of this case.

Although defendant correctly notes that *Malarkey v. Texaco, Inc.*, 983 F.2d 1204, 1209 (2d Cir.1993) declined to adopt a "rule that all retaliation claims are per se reasonably related," the Second Circuit in that case relied heavily on the fact that plaintiff sought to amend her complaint to assert a claim of retaliation after a decade of litigation, while on the eve of trial, thus putting the defendant in the position of facing new claims raising out of conduct significantly different in kind from that alleged in her original EEOC complaint. The court also emphasized that "[t]his is not to suggest that in every instance delay will require rejection of a claim alleged to be reasonably related," and concluded that as the plaintiff had known of her new allegations at least three years prior to the close of discovery, "there is no basis to disturb the trial court's exclusion of the non-promotional retaliatory claims." *Id.* at 1210. Thus, *Malarkey* does not change the rule in this circuit that "[t]he reasonably related rule has been broadly construed to allow judicial redress for most retaliatory acts arising subsequent to an EEOC filing...." *Id.* at 1209. Instead, it simply stands for the principle that under some circumstances, such as where there is unexplained and prejudicial delay, a claim of retaliation alleged to be reasonably related to an EEOC charge may nonetheless be rejected.

Here, plaintiff's CHRO and EEOC complaints alleged that she was deprived of her Director position because of her disability, sex and age. The acts of retaliation now claimed are alleged to have arisen directly as a result of plaintiff's retention of counsel and pursuit of these administrative complaints, and began immediately upon her return from disability leave, approximately six weeks after the filing of the administrative complaints, and five days after UNH received her CHRO complaint. Although plaintiff's failure to raise these claims in her previous federal lawsuit, which was filed after some of the retaliatory conduct had already occurred, is unexplained, the Court finds that as there has been no showing of any prejudice to defendant in permitting her to pursue the claims in *this* lawsuit, there is no basis for rejecting plaintiff's claims as not reasonably related to her CHRO/EEOC filings.

■ Alternatively, defendant maintains that plaintiff's current lawsuit is barred by the ruling in the first lawsuit denying plaintiff's motion to amend her complaint. However, as noted above, one of the grounds on which UNH relied in opposing the motion to amend the complaint was that plaintiff would be free to pursue the retaliation claims in a separate complaint, and the motion was denied "for the reasons set forth in defendant's brief." Defendant therefore cannot be heard now to argue that plaintiff is barred from doing precisely what it suggested she do.[4]

## IV. Conclusion

For the reasons discussed above, the Court concludes that plaintiff has sufficiently exhausted her administrative remedies to permit her to pursue her retaliation claim, and that such claim is not barred by the Court's prior ruling in the related case, 3:99cv2456 (JBA). Accordingly, defen-

---

4. Additionally, the Court notes that defendant incorrectly represents that there was no mention of retaliation in plaintiff's first lawsuit, as retaliation was identified in the Rule 26(f) Report filed July 26, 1999, as an area on which plaintiff's discovery would be needed. *See* Def.Rule 9(c) Statement, Ex. 21, at 12.

dant's motion for summary judgment is DENIED.

IT IS SO ORDERED.